419 So.2d 1058 (1982)
Rufus Eugene STEVENS, Appellant,
v.
STATE of Florida, Appellee.
No. 57738.
Supreme Court of Florida.
September 14, 1982.
*1060 John R. Forbes, Jacksonville, for appellant.
Jim Smith, Atty. Gen. and Raymond L. Marky, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This cause is before the Court on appeal from a judgment of the Circuit Court of the Fourth Judicial Circuit in and for Duval County. The appellant was convicted of murder in the first degree. After receiving the jury's recommendation of a sentence of life imprisonment, the trial court sentenced appellant to death. This Court has jurisdiction of the appeal. Art. V, § 3(b)(1), Fla. Const. We affirm the judgment and sentence.
During the early morning hours of March 13, 1979, Eleanor Kathy Tolin, while working as cashier at an all-night convenience store, was robbed, abducted, raped, and killed. The appellant Rufus Stevens and his friend Scott Engle were jointly indicted on a charge of first-degree murder. The two defendants were tried separately.
Appellant was arrested at his home at about 3:30 a.m. on March 20, 1979. Later that morning appellant signed a confession admitting participation in the robbery, abduction, and rape, but placing the blame for the murder on Engle. Before trial, appellant moved to suppress his confession on the ground that his state of severe intoxication at the time rendered his statement involuntary. At the hearing on the motion to suppress, appellant testified that during the day and evening preceding his arrest and interrogation, he consumed one and one-half to two cases of beer and some whiskey. An expert testified that such a level of alcohol consumption would have an extremely debilitating effect on a normal person's cognitive and motor processes. The state presented testimony that at about midnight on the night of his arrest, by which time most of the alcohol consumption appellant testified to would have been completed, appellant was able to converse coherently and drive a car. The arresting officer and the interrogating officer testified that at the time of arrest and during questioning, appellant was intelligible and capable of coherent conversation. In conjunction with his motion to suppress, appellant asked for an opportunity to reproduce the effects of the alcohol ingestion he testified to, in order to demonstrate to the court his mental state at the time of his confession. The court declined to allow such test or demonstration and denied the motion to suppress.
Based on appellant's confession in which he admitted participation in the robbery and abduction but blamed the actual killing on Engle, the state indicated a willingness to allow appellant to plead guilty in exchange for a recommended sentence of life imprisonment rather than death, or to plead guilty to a lesser, non-capital offense. As a condition precedent to such a plea bargain, the state demanded a polygraph examination for the purpose of determining the extent of appellant's participation in the criminal episode leading to the murder. Appellant agreed to submit to the polygraph test.
At the place and time scheduled for the examination, only appellant and the police polygraph examiner were present. Before being connected to the machine, appellant spontaneously made some statements concerning his participation in the crime. The immediate result of appellant's utterances was that the examiner did not proceed with the examination. A further result was that the state discontinued the plea negotiations, since appellant's statements were inconsistent with his earlier confession.
The defense moved to exclude these statements on the grounds that they were *1061 made in connection with plea negotiations and that the state had promised that the polygraph statement would not be used in evidence. The trial court ruled that the statements could not be used by the state in its case in chief but deferred ruling on whether they might be used in rebuttal.
At trial the state presented evidence that Kathy Tolin disappeared from her job during the early morning hours of March 13, 1979. Her body was later discovered in a wooded area nearby. She had been raped, strangled, stabbed, and mutilated. Either the strangulation or the stabbing could have been the cause of death.
The interrogating officer testified to appellant's confession made soon after his arrest. According to this statement, appellant directly participated in robbing, kidnapping, and raping the victim. He and his accomplice abducted her from the store and took her into some woods. Appellant said, however, that she ran away after being raped, and that Engle ran after her. Fifteen minutes later, according to the confession, Engle returned, dragging the dead body of the victim. Then appellant and Engle placed the body in the trunk of appellant's car and removed it to another wooded area.
A state witness who was well acquainted with both appellant and Engle testified that he was present when appellant and Engle made a plan to rob the convenience store, and that they left him at his home at about 2:00 a.m. on the night of the murder and departed, with robbery as their stated purpose, in appellant's car, with appellant driving. After the murder, the witness testified, appellant remarked to him "We got to get rid of Scott's knife because that's what it was done with." Testimony and Proceedings, vol. V, at 573. This witness also testified that he talked with Engle about the murder and that Engle refused to give up his knife, indicating that he did not believe the knife could be linked to the murder. The witness testified:
I asked him why they did it and he said that they took her out of the store to get her away from a phone. They took her out into the country and Rufus went crazy and started saying she's going to identify us. And I asked him, I said, man, was it worth killing a little gal over a lousy fifty-dollar robbery and he said no, it wasn't.
Id. at 577-78.
The testimony of the state's main witnesses was corroborated by several items of physical evidence. Police recovered the knife identified as belonging to Scott Engle and established as having been the murder weapon. A minute amount of blood was found on the knife which could have been the blood of Kathy Tolin but could not have come from Engle or appellant. Blood found in the trunk of appellant's car was also of the victim's blood type. Hairs recovered from the back seat and trunk of appellant's car were probably those of the victim, according to expert testimony.
Appellant argues four points on appeal. He maintains that (1) the court erred in refusing to grant in full his motion to exclude the statements he made to the polygraph examiner; (2) that the court erred in denying his request to conduct an experiment to demonstrate the effects of the level of alcohol intoxication with which he asserts he was afflicted at the time of his arrest and interrogation; (3) that the court erred in refusing to suppress his confession; and (4) that the court erred in sentencing him to death when the jury recommended life imprisonment.
On the first point, appellant argues that the court's ruling, excluding the statement to the polygraph examiner from evidence on the state's case in chief, left open the possibility that the statement could have been used for impeachment or rebuttal purposes in the event appellant had testified in his own defense. Indeed it did leave open such a possibility since the court specifically stated in its order of exclusion that in the event of the defendant's choosing to testify in his own defense, the court would entertain a proffer of the statement for purposes of impeachment. Appellant argues that the statement should have been completely excluded and that the error prejudiced his *1062 defense by preventing him from testifying in his own behalf.
Appellant argues that his statement was made in connection with plea negotiations and was therefore inadmissible for any purpose under section 90.410, Florida Statutes (1979)[1] and Florida Rule of Criminal Procedure 3.172(h).[2] The state argues that the trial judge was correct in its ruling. The fact that the statement was excludable from the case in chief, the state argues, should not provide a license for an accused to commit perjury free from the risk of being confronted with prior inconsistent statements, citing Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) and Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). The state had agreed that the polygraph results would not be used in evidence; however, the state argues that the statement in question is not part of the result of a polygraph examination.
To determine whether a statement is made in connection with plea negotiations, a court should use
a two-tiered analysis and determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances.
United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir.1978) (en banc); see also United States v. O'Brien, 618 F.2d 1234 (7th Cir.), cert. denied, 449 U.S. 858, 101 S.Ct. 157, 66 L.Ed.2d 73 (1980); United States v. Pantohan, 602 F.2d 855 (9th Cir.1979). Whether a defendant's subjective expectation of negotiating a plea is reasonable depends on whether the state has indicated a willingness to plea-bargain and has in fact solicited the statement in question from the defendant. Unsolicited, unilateral utterances are not statements made in connection with plea negotiations. See Blake v. State, 332 So.2d 676 (Fla. 4th DCA 1976).
We conclude that the statement in question was not made in connection with plea negotiations. Although the polygraph examination was arranged so that appellant's version of the criminal episode could be substantiated and although this was agreed to so that the parties could proceed to reach a negotiated plea, appellant's spontaneous, unilateral statement was not connected to those negotiations in the sense contemplated by the rule of exclusion we are applying. The statement was not made during an actual polygraph examination nor was it made in response to any preliminary questions. Appellant made the statement spontaneously without any prompting or inducement. Appellant had no reasonable subjective belief that his statement was a part of the plea negotiations. Therefore, not only was the trial court correct in holding that the statement was admissible for impeachment, but the court could also have ruled the statement admissible for use in the state's case in chief.
Next appellant argues that the court should have excluded his confession from evidence. He contends that, although he was advised of his Fifth Amendment rights in the standard fashion, he was led to believe that if he cooperated with police he would obtain leniency. In support of this contention appellant points not to any actual police inducement, but to the fact that the interrogating officer was evasive when appellant asked him whether the case might lead to the death penalty being imposed. In essence appellant contends that without *1063 knowing that a sentence of death was a possible penalty, he cannot have knowingly waived his constitutional right to remain silent. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
The same kind of argument was raised in United States v. Hall, 396 F.2d 841 (4th Cir.), cert. denied, 393 U.S. 918, 89 S.Ct. 248, 2 L.Ed.2d 205 (1968). The court rejected the argument saying:
It is undisputed that at the time of arrest Agent Dowling did not inform Hall of the punishment he might receive if he were convicted of the robbery with which he was charged. Hall argues that without this knowledge he simply was not in a position to make the knowing and voluntary waiver contemplated by Miranda. Miranda, however, reflects the Supreme Court's concern that an accused might, to his detriment, forfeit rights afforded him by the Constitution simply because he was not aware that he possessed such rights. We do not find in that decision any intimation that knowledge of the punishment for the crime with which he was charged is a prerequisite to a valid waiver of constitutional rights and we conclude that the validity of Hall's waiver is not vitiated by the admitted absence of knowledge or information as to the possible punishment.
Id. at 845. We agree. A police interrogator must neither abuse a suspect, nor seek to obtain a statement by coercion or inducement, nor otherwise deprive him of Fifth or Sixth Amendment rights. As a safeguard against such improprieties, the Miranda warnings have been prescribed. But a police interrogator's job is to gain as much information about the alleged crime as possible without violating constitutional rights, and it is not his duty to apprise a suspect of the possible punishment for the crime under investigation. The ultimate punishment to be meted out upon one convicted of a crime depends on the nature of the formal charges filed, which is often a function of prosecutorial discretion, the outcome of the trial, and the exercise of discretion by the sentencing judge. At the investigatory stage of the criminal justice process, it is quite proper for an investigating officer to decline to speculate on the possible ultimate result. Therefore we hold that the court did not err in denying the motion to suppress the confession.
Appellant's third point is that the trial court erred in denying appellant's novel and imaginative request to be allowed to drink two cases of beer in order to demonstrate to the court his state of intoxication when he confessed. He argues that the experiment should have been allowed because the result would have been relevant to the question of whether he was capable of intelligently and voluntarily waiving his constitutional rights.
The admissibility of a test or experiment lies within the discretion of the trial judge. Reid v. State, 68 Fla. 105, 66 So. 725 (1914); Hisler v. State, 52 Fla. 30, 42 So. 692 (1906). A court should admit evidence of scientific tests and experiments only if the reliability of the results are widely recognized and accepted among scientists. Rodriguez v. State, 327 So.2d 903 (Fla. 3d DCA), cert. denied, 336 So.2d 1184 (Fla. 1976); Coppolino v. State, 223 So.2d 68 (Fla. 2d DCA 1968), appeal dismissed, 234 So.2d 120 (Fla. 1969), cert. denied, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 794 (1970); 3 S. Gard, Jones on Evidence, § 15:9 (6th ed. 1972).
To allow the defendant to present himself to the court for observation after drinking two cases of beer would have had a very predictable result but would not, it seems to us, have risen to the dignity of an accepted scientific test or experiment. Appellant's motion was supported only by his own testimony that he was so intoxicated that he was not aware of what he was doing. There was other testimony, however, that he was coherent and functioning normally at the time of his arrest. Therefore we conclude that the trial court did not abuse its discretion in denying the motion.
We come now to the propriety of the sentence of death. The trial judge found that the murder was committed in the commission of or flight after committing rape and kidnapping, an aggravating circumstance *1064 under section 921.141(5)(d), Florida Statutes (1977); that it was committed for the purpose of avoiding or preventing a lawful arrest, id., § 921.141(5)(e); that it was committed for pecuniary gain, id., § 921.141(5)(f); and that it was especially heinous, atrocious, or cruel. Id., § 921.141(5)(h). The judge also specifically found that the defense established no mitigating circumstances.
There was sufficient evidence to support the trial judge's findings that the four aggravating circumstances were proven beyond a reasonable doubt. Evidence presented at the guilt phase of the trial established that the murder was the ultimate result of a closely connected chain of events that included kidnapping and sexual battery. Thus the court was correct to conclude that the aggravating circumstance in section 921.141(5)(d)[3] applied. The finding that the murder was committed for pecuniary gain was supported by evidence that appellant and his accomplice took money from the store's cash register, the property of the victim's employer and in her possession until the robbery and abduction. That the murder was committed for the purpose of avoiding arrest for crimes already committed was established by testimony about appellant's own statement to his accomplice expressing fear of detection and apprehension and insisting on the need to eliminate the victim as a possible identifying witness. See Adams v. State, 412 So.2d 850 (Fla. 1982). Finally, the terror and pain the victim must have felt while being abducted, brutally raped, and then strangled and stabbed to death, establishes that the capital felony was especially heinous, atrocious, or cruel. E.g., Jackson v. State, 366 So.2d 752 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Knight v. State, 338 So.2d 201 (Fla. 1976).
Appellant argues that the trial judge erred in failing to find the existence of mitigating circumstances. He argues that the court should have found that he had no significant history of prior criminal activity. § 921.141(6)(a), Fla. Stat. (1977). The court found, however, that appellant had previously been convicted of theft, receiving stolen property, and criminal trespass. In addition, during the sentencing hearing, a teenage girl testified that appellant had raped her. Thus there was no reason for the court to find a lack of significant history of prior criminal activity. See Dobbert v. State, 328 So.2d 433 (Fla. 1976), aff'd, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).
Appellant argues that the court should have found that due to intoxication and extreme mental or emotional disturbance, his ability to appreciate the criminality of his conduct and to conform to the requirements of the law was substantially impaired. § 921.141(6)(b), (f). There was no evidence to support such findings. A court-appointed psychiatrist reported no extreme mental or emotional disturbance. No testimony supported a finding of impaired capacity. Therefore the court did not err in declining to find these factors. See Meeks v. State, 336 So.2d 1142 (Fla. 1976).
Appellant argues that the trial court should have found that his participation in the crime was relatively minor and that he acted under the substantial domination of another person. § 921.141(6)(d), (e). The trial judge specifically found, however, that both appellant and Engle were guilty of the crimes and that neither was under the domination of another. There was testimony at the guilt phase of the trial that appellant initially approached Engle and proposed robbing the store. In addition, the same witness testified that Engle told him after the incident that the murder also was appellant's idea. Furthermore, the presentence investigation received by the sentencing judge but not provided to the *1065 jury supplied further information concerning the crime. In statements made to the court-appointed psychiatrist, appellant conceded that the robbery and kidnapping were originally his idea. He also admitted to mutilating the victim's vagina. Therefore there was sufficient evidence for the court to refuse to find that appellant's role was minor or that he was dominated by Engle.
Finally, appellant argues that the trial court erred in overriding the jury's recommendation of life imprisonment. The sentencing judge must accord great weight to a jury's recommendation of life imprisonment, but may decline to follow it if the facts indicating that a sentence of death is appropriate under the law are "so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). The record amply supports the judge's findings of four aggravating circumstances and a total lack of mitigating circumstances. Therefore, death is the appropriate punishment. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974). Under the properly established facts and circumstances, it was proper for the judge to override the jury's recommendation. The recommendation of life was not based on any valid mitigating factor discernible from the record. See Hoy v. State, 353 So.2d 826 (Fla.), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978); Douglas v. State, 328 So.2d 18 (Fla.), cert. denied, 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976).
The judgment of conviction of first-degree murder is affirmed. The sentence of death is affirmed.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD and SUNDBERG, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion, with which OVERTON, J., concurs.
McDONALD, Justice, concurring in part/dissenting in part.
I concur with the affirmance of conviction but dissent on the imposition of the death penalty. The jury recommended that the sentence be life imprisonment. The jury could have concluded that Stevens participated in the robbery and rape, but that Engle was the sole perpetrator of the homicide. There was, therefore, a rational basis for the jury's recommendation and it should have been followed by the trial judge.
OVERTON, J., concurs.
NOTES
[1] Offer to plead guilty; nolo contendere; withdrawn pleas of guilty.  Evidence of a plea of guilty, later withdrawn; a plea of nolo contendere; or an offer to plead guilty or nolo contendere to the crime charged or any other crime is inadmissible in any civil or criminal proceeding. Evidence of statements made in connection with any of the pleas or offers is inadmissible, except when such statements are offered in a prosecution under chapter 837.
[2] Except as otherwise provided in this Rule, evidence of an offer or a plea of guilty or nolo contendere, later withdrawn, or of statements made in connection therewith, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.
[3] Section 921.141(5)(d) reads: "The capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, rape, arson, burglary, kidnapping, or aircraft piracy or the unlawful throwing, placing, or discharging of a destructive device or bomb."