487 So.2d 8 (1986)
Ira Martin AMAZON, Appellant,
v.
STATE of Florida, Appellee.
No. 64117.
Supreme Court of Florida.
March 13, 1986.
Rehearing Denied May 6, 1986.
*9 James Marion Moorman, Public Defender, and W.C. McLain, Asst. Public Defender, Chief, Capital Appeals, Tenth Judicial Circuit, Bartow, for appellant.
Jim Smith, Atty. Gen., and James H. Dysart, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
We review Ira Amazon's convictions and sentences to death for the murders of a mother and daughter. Jurisdiction is mandatory pursuant to article V, section 3(b)(1), Florida Constitution. We affirm the convictions, but vacate the sentences and remand with directions.
Neighbors found Joy Chapin and her eleven-year-old daughter, Jennifer, dying from multiple stab wounds in their Pinellas County home early in the morning of December 1, 1981. A neighbor had been alerted when she received a telephone call from Jennifer, interrupted by screams. Jennifer was found lying next to the telephone, her mother was found downstairs.
Amazon, who lived next door to the Chapins, was among the crowd watching the subsequent police investigation. He concocted a burglary of his own home, either before or after the murders, and went to *10 police with an exculpatory story, i.e. there had been two homes entered that night. Twelve hours later, he was arrested after his fingerprints were matched to those found on a window screen pried off the Chapin's window to gain entry. Other circumstantial evidence also linked him to the murders. At first denying the crimes, Amazon eventually confessed to detectives.
A grand jury indicted Amazon on two counts of first-degree murder. The same day as the indictments, the state filed an information charging burglary and sexual battery. Before trial, Amazon pleaded guilty to the burglary and sexual battery charges then moved to dismiss the murder charges on double jeopardy grounds. The trial judge denied the motion, and the district court declined to review the order, without prejudice to raise the issue on appeal. Amazon was convicted of first-degree murder on both counts. The jury recommended life sentences, but the trial judge overrode the recommendation and sentenced Amazon to death.

DOUBLE JEOPARDY
Amazon first challenges his prosecution for felony murder after he was subjected to jeopardy for the underlying crimes of burglary and sexual battery. The prosecution proceeded under both premeditated and felony first degree murder theories, and the jury was instructed accordingly. The verdict form did not specify upon which theory the jury based its finding of guilt.
Amazon's double jeopardy claim fails. In State v. Enmund, 476 So.2d 165 (Fla. 1985), we held that a felony underlying a felony murder charge is not the "same offense" for purposes of double jeopardy, and therefore a separate conviction and sentence may be had for the underlying felony. Serial prosecutions are permissible for crimes which are not the "same offense" under the rule of Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), the Supreme Court held that a prior conviction for failure to reduce speed to avoid collision did not bar, on double jeopardy grounds, a subsequent prosecution for manslaughter arising from the same criminal episode. The Court held that this was so, even though the prosecution for manslaughter might entail proof of all the elements of failure to reduce speed to avoid collision, so long as the lesser offense was not the "same" under Blockburger. The Court distinguished the case from Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), wherein conviction for a prior lesser offense which was the "same" under Blockburger barred a subsequent prosecution on the greater offense.
In the case sub judice, the underlying felonies are not the "same" under Blockburger, and the state would not be barred from serial prosecutions of the underlying felonies and the felony murders. If serial prosecution is permitted, which raises more serious double jeopardy considerations than here, then there is no double jeopardy bar to accepting the guilty pleas to the underlying felonies and withholding adjudication and sentencing until the felony murder charges have been resolved, as was done here.

AMAZON'S ABSENCE FROM THE JURY VIEW
Amazon next challenges his absence from the jury view of the crime scene. He argues that he was unaware that testimony would be presented during the view (explanations by investigators of what they found and where they found it), and that it was fundamental error for the trial court to accept the waiver by his attorneys rather than to conduct a hearing to determine whether Amazon knowingly and voluntarily waived his presence. Following oral argument before this Court, we relinquished jurisdiction of the case for an evidentiary hearing on the circumstances surrounding the waiver. The trial judge concluded that Amazon "knowingly and intelligently" waived his presence.
*11 A capital defendant is free to waive his presence at a crucial stage of the trial. Peede v. State, 474 So.2d 808 (Fla. 1985). Waiver must be knowing, intelligent, and voluntary. Francis v. State, 413 So.2d 1175 (Fla. 1982). Counsel may make the waiver on behalf of a client, provided that the client, subsequent to the waiver, ratifies the waiver either by examination by the trial judge, or by acquiescence to the waiver with actual or constructive knowledge of the waiver. See State v. Melendez, 244 So.2d 137 (Fla. 1971). Here, trial counsel clearly waived Amazon's presence knowingly, intelligently and voluntarily. Amazon knew of the waiver, because he had been consulted by his attorneys on the point and advised to waive his presence. He authorized his attorneys to make the waiver. His authorization was knowing and intelligent and as voluntary as any decision made by a client who relies upon and accepts advice of counsel. Amazon subsequently acquiesced to the waiver, with actual notice, and now cannot be heard to complain.[1]

JUROR CONDUCT
Amazon next urges that certain conduct of the jurors requires reversal. After the trial was finished, the trial judge learned of violations of the sequestration rules and conducted a special hearing. Amazon urges that the burden is on the state to refute a presumption of prejudice raised whenever juror misconduct is shown. However, that is not the rule in Florida, as one of the cases cited by Amazon explains:
If the [misconduct is] such that [it] would probably influence the jury, and the evidence in the cause is conflicting, the onus is not on the accused to show he was prejudiced for the law presumes he was. But it should be clearly understood that not all [misconduct] will vitiate a verdict, even though such conduct may be improper. It is necessary either to show that prejudice resulted or that the [misconduct was] of such character as to raise a presumption of prejudice.
Russ v. State, 95 So.2d 594, 600-01 (Fla. 1957). The United States Supreme Court has said:
In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial... . The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.
Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954). In other words, potentially harmful misconduct is presumptively prejudicial, but the defendant has the initial burden of establishing a prima facie case that the conduct is potentially prejudicial.
The record in this case shows that three jurors went to the bar in the motel where the jury was sequestered on the evening after the guilty verdicts but before the sentencing phase of the trial. Clearly no prejudice could have resulted since the jury recommended life. One of the same jurors was seen in the bar one evening during the guilt phase of the trial. The record fails to show a prima facie case that any potentially prejudicial communication occurred during this visit. Another of the same jurors, an alternate, had dinner at the motel with his fiance, but the case was not discussed. Again, no prima facie potential prejudice is shown.
A fourth juror testified he watched news accounts of the trial on television, with the sound turned off. His roommate, the alternate juror discussed above, also saw the television screen. One of the news accounts included videotape of the testimony of an important state witness, causing the fourth juror to comment *12 to the alternate that the witness's testimony had been "impressive." While this establishes a prima facie case of potential prejudice, the presumption is rebutted by the nature of the occurrence: the sound was off, so the jurors were not exposed to prejudicial verbiage, and the brief footage of the witness, which merely reprised what the jury had seen for itself that day, cannot conceivably have influenced the result. The witness was a metallurgist whose testimony tended to show that Amazon took a knife into the house with him, buttressing the state's case that the murders were premeditated. However, Amazon's defense was that the murders were second-degree, "depraved mind" killings. The question of whether Amazon took a knife with him or grabbed one from a counter inside the Chapin home, as he testified, is not dispositive of his state of mind at the moment of the killings. Likewise, the metallurgist's testimony was not dispositive of the question of whether Amazon took the knife into the Chapin home. The connection between the metallurgist's testimony and the question of first or second-degree murder is simply too remote to conclude that a brief visual reprise of the witness testifying could have had a substantial impact on the outcome. Finally, the juror's "impressive" comment does not show that the juror had developed a premature opinion about the case. Jordan v. State, 22 Fla. 528 (1886).

REMAINING ISSUES IN GUILT PHASE
We find no merit in the remaining issues raised regarding the guilt phase of the trial. Amazon claims error in admitting testimony about a burglary from a neighbor's home some time before the murders. The murder weapon matched the description of a knife taken in the burglary, and evidence showed that Amazon had given his mother a set of knives matching the description of the stolen set shortly after the burglary. The evidence therefore tended to show Amazon had access to the murder weapon and carried it with him into the Chapin home, relevant to the question of premeditation. Amazon's claim that this was impermissible evidence of a collateral crime is groundless. Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981); Ashley v. State, 265 So.2d 685 (Fla. 1972).
Likewise, Amazon's objection to the metallurgist's testimony regarding marks on a screen removed to gain entry into the Chapin home is meritless. Although the expert could not conclusively say the marks were made with the murder weapon, which would tend to prove that the killer took the knife into the home, he did testify that there was a high probability that the murder weapon made the marks, based on his expert knowledge. The testimony was probative evidence requiring specialized knowledge, and it was not error to admit the testimony over the argument that the lack of conclusiveness meant the jury was just as qualified as the expert to draw the conclusion from the physical evidence.

SENTENCE
Amazon raises several arguments attacking the sentencing phase, but we need only address one: the trial judge's override of the jury's recommendation of life. "In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). The trial judge found four aggravating circumstances: the murder was committed during a rape, burglary, kidnapping  the court reasoned that Amazon forced Mrs. Chapin to move after the rape to show him where he could find valuables, constituting asportation sufficient to support a finding of kidnapping; the murders were committed to avoid arrest  a detective testified that Amazon said he killed the victims because they could identify him; the murders were committed for pecuniary gain  Amazon admitted he demanded valuables after the rape; the murders were especially heinous, atrocious, and *13 cruel  the circumstances of the killings and the 15-20 minutes it took the victims to bleed to death from multiple stab wounds was found to support this aggravating factor.
The trial judge found no mitigating factors. However, we are persuaded that the jury could have properly found and weighed mitigating factors and reached a valid recommendation of life imprisonment. We believe there was sufficient evidence for the jury to have found that Amazon acted under extreme mental or emotional disturbance. The defense theory in the guilt phase was that Amazon had acted from a "depraved mind," i.e. committed second-degree murder. There was some inconclusive evidence that Amazon had taken drugs the night of the murders, stronger evidence that Amazon had a history of drug abuse, and testimony from a psychologist indicated Amazon was an "emotional cripple" who had been brought up in a negative family setting and had the emotional maturity of a thirteen-year-old with some emotional development at the level of a one-year-old. Age could also be found as a mitigating factor. Although Amazon was nineteen, an age which we have held is not per se a mitigating factor. Peek v. State, 395 So.2d 492 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981), the expert testimony about Amazon's emotional maturity suggests that the jury could have properly found age a mitigating factor in this case.
In light of these mitigating circumstances, one may see how the aggravating circumstances carry less weight and could be outweighed by the mitigating factors. The heinous, atrocious and cruel murders were committed in an irrational frenzy. The evidence that Amazon killed to avoid arrest is the unsupported assertion by a detective that Amazon told him this. The defense showed on cross-examination that this statement was not recorded anywhere by the detective, and the jury could well have discounted the evidence. While the fact that the victims knew Amazon could allow inference of the aggravating factor, when considered in light of the "frenzied attack" hypothesis, Amazon may well have not considered avoidance of arrest when he killed his victim.
In other words, the jury could have found the crimes sufficiently serious to warrant first-degree murder convictions, but the combination of the "depraved mind" defense and the possible mitigating factors discussed supra mitigated against a recommendation of death. The facts are not so clear and convincing that no reasonable person could differ that death was the appropriate penalty.
Accordingly, we affirm the judgment of guilt, but vacate the sentences of death with directions that appellant be sentenced to life imprisonment pursuant to section 775.082, Florida Statutes (1981), for each murder. The sentencing court shall have the discretion to decide whether the two sentences of life imprisonment are to be served concurrently or consecutively.
It is so ordered.
OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
BOYD, C.J., concurs in part and dissents in part with an opinion, in which ADKINS, J., concurs.
BOYD, Chief Justice, concurring in part and dissenting in part.
I concur in the Court's decision to affirm the two convictions of murder in the first degree. I dissent to the Court's reduction of the sentences to life imprisonment. Numerous decisions of this Court make clear that under certain circumstances it is appropriate for a court to sentence a capital offender to death even though the jury has recommended life imprisonment. E.g., Mills v. State, 476 So.2d 172 (Fla. 1985); Porter v. State, 429 So.2d 293 (Fla.), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); Stevens v. State, 419 So.2d 1058 (Fla. 1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983); McCrae v. State, 395 So.2d 1145 (Fla. 1980), cert. denied, 454 U.S. 1037, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981); Johnson *14 v. State, 393 So.2d 1069 (Fla. 1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981); Dobbert v. State, 375 So.2d 1069 (Fla. 1979), cert. denied, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980); Hoy v. State, 353 So.2d 826 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978); Douglas v. State, 328 So.2d 18 (Fla.), cert. denied, 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976).
My review of the record convinces me that the trial court's sentencing findings are fully supported by the record. The sentencing judge's findings clearly demonstrate that the jury-override standard of Tedder v. State, 322 So.2d 908 (Fla. 1975), has been more than satisfied. The trial court's findings are as follows:

COURT'S FINDINGS AS TO AGGRAVATING AND MITIGATING CIRCUMSTANCES IN SUPPORT OF THE DEATH PENALTY
"The Defendant, IRA AMAZON, was found guilty of Murder in the First Degree of Joy F. Chapin and Murder in the First Degree of Jennifer Chapin, the verdicts being returned on Saturday, November 20, 1982. On Sunday, November 21, 1982, this Court conducted the penalty phase of the trial. Both the State and the Defendant presented evidence as to aggravating and mitigating circumstances. After deliberation, the Jury returned a recommendation to the Court to impose life sentences.
"This Court is not unmindful of the Florida Supreme Court's guidance to Trial Courts in cases involving the sentence of death over a recommendation of life by the jury. In Tedder v. State, 322 So.2d 908, (Fla. 1975) at page 910, the Supreme Court said,"
"A jury recommendation under our trifurcated death penalty statute should be given great weight. In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ."
"The facts in the case sub judice suggesting a sentence of death are SO CLEAR AND CONVINCING that VIRTUALLY NO REASONABLE PERSON WOULD DIFFER.
"It should also be noted that the Supreme Court further stated in the Tedder case,"
"It is apparent that all killings are atrocious, * * *. Still, we believe that the Legislature intended something `especially' heinous, atrocious or cruel when it authorized the death penalty for first degree murder." (Supra at page 910).
"In the case before this Court, the murders of Joy F. Chapin and Jennifer Chapin were `ESPECIALLY HEINOUS, ATROCIOUS AND CRUEL.'
"The sentence of death is imposed by this Court because the aggravating circumstances which were proven beyond a reasonable doubt, vastly outweigh the mitigating circumstances."

MITIGATING CIRCUMSTANCES
THE DEFENDANT HAS NO SIGNIFICANT HISTORY OF PRIOR CRIMINAL ACTIVITY. (Sec. 921.141(6)(a) Fla. Stat. (1981)).
FINDING: This mitigating circumstance is not applicable. The defense chose to waive this circumstance in exchange for the State not putting on evidence to refute the Defendant's lack of criminal record.
THE CAPITAL FELONY WAS COMMITTED WHILE THE DEFENDANT WAS UNDER THE INFLUENCE OF EXTREME MENTAL OR EMOTIONAL DISTURBANCE. (Sec. 921.141(6)(b) Fla. Stat. (1981)).
FINDING: The testimony presented by the Defense pertaining to this mitigating circumstance was not sufficiently compelling to cause mitigation of the sentence imposed by this Court.
"The Defense presented testimony by Dr. Sidney Merin, a forensic psychologist, about the Defendant's emotional and personal makeup. The summary of Dr. Merin's *15 testimony showed that the Defendant did have problems obtaining affection and understanding in the home, and that IRA AMAZON was an expedient and non-reflective person. Dr. Merin went so far as to refer to the Defendant as an `emotional cripple'. However, the record in this case clearly shows that IRA AMAZON was not found to be incompetent to stand trial nor was he found incompetent at the time of the offenses.
"This Court gave great consideration to the testimony of Dr. Merin. However, the Court finds (1) that although there was some evidence of a personality defect in the Defendant and some possibility of an impaired capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law, such capacity was NOT SUBSTANTIALLY impaired and (2) that the Defendant was not under the influence of extreme mental or emotional disturbance."
THE VICTIM WAS A PARTICIPANT IN THE DEFENDANT'S CONDUCT OR CONSENTED TO THE ACT. (Sec. 921.141(6)(c) Fla. Stat. (1981)).
FINDING: This mitigating circumstance is not applicable.
"The Defense did not argue this mitigating factor. The evidence of IRA AMAZON's having confessed to the rape of Joy Chapin and the Medical Examiner's testimony of Joy Chapin having been abused and sexually assaulted prior to her death supports the fact that she was not a willing participant. Further, evidence shows that Jennifer Chapin was frantically phoning for help when she was viciously attacked and murdered by IRA AMAZON. She was not a willing participant."
THE DEFENDANT WAS AN ACCOMPLICE IN THE CAPITAL FELONY COMMITTED BY ANOTHER PERSON AND HIS PARTICIPATION WAS RELATIVELY MINOR. (Sec. 921.141(6)(d) Fla. Stat. (1981)).
FINDING: This mitigating circumstance does not apply in this case. IRA AMAZON did not have an accomplice in these murders.
THE DEFENDANT ACTED UNDER EXTREME DURESS OR UNDER THE SUBSTANTIAL DOMINATION OF ANOTHER PERSON. (Sec. 921.141(6)(e) Fla. Stat. (1981)).
FINDING: This mitigating circumstance was not present. The Defense did not present any evidence or argument on this point. Additionally, there was no evidence presented during the trial to establish that IRA AMAZON was under substantial domination of another person or acted under extreme duress.
THE CAPACITY OF THE DEFENDANT TO APPRECIATE THE CRIMINALITY OF HIS CONDUCT OR TO CONFORM HIS CONDUCT TO THE REQUIREMENTS OF LAW WAS SUBSTANTIALLY IMPAIRED. (Sec. 921.141(6)(f) Fla. Stat. (1981)).
FINDING: There is NO evidence that IRA AMAZON lacked the capacity to appreciate the criminality of his conduct or that his ability to conform his conduct to the requirements of law was substantially impaired.
"The Defense attempted to show that the Defendant had consumed drugs and alcohol prior to the murders to such an extent that his ability to appreciate the criminality of his acts was impaired. The State presented two expert witnesses to refute this contention. Dr. Brian Finkle, professor, University of Utah, testified as an Expert in Human Toxicology and Forensic Toxicology. Federal Bureau of Investigation Agent, Drew Richardson, testified as an Expert in Forensic Chemistry. Both of these Expert Witnesses stated that they did not find any amphetamines in the blood drawn from the Defendant at the time of his arrest. Dr. Finkle also testified that he did not find any other drugs or alcohol in IRA AMAZON's blood or urine samples.
"Further, this Court finds that IRA AMAZON's ability to recall and relate clearly (1) to the interrogating officers, Detective Gary D. Herbein and Bruce W. Earling, at the time of his confessions; (2) to Dr. Merin at the time of his psychological examination; and (3) to the prosecutor during his *16 cross-examination at trial, established his LACK OF impaired condition."
THE AGE OF THE DEFENDANT AT THE TIME OF THE CRIME. (Sec. 921.141(6)(g) Fla. Stat. (1981)).
FINDING: The Court considered this mitigating circumstance in light of the Florida Supreme Court's ruling in Songer v. State, 322 So.2d 481, (Fla. 1975), wherein the Supreme Court in reviewing this same mitigating factor stated, "* * * today one is considered an adult responsible for one's own conduct at the age of 18 years". IRA AMAZON was 19 years of age when he committed the despicable acts of murdering Joy and Jennifer Chapin. The evidence establishes beyond a reasonable doubt that he was mature enough to understand the consequences and criminality of his conduct. The Court rejects this mitigating circumstance.
MITIGATING CIRCUMSTANCES OTHER THAN STATUTORILY ENUMERATED MITIGATING CIRCUMSTANCES.
"This Court has the duty to consider any applicable mitigating circumstances in determining the fairness of a life or death sentence. Therefore, throughout both the guilt phase and the sentencing phase of the trial, the Court listened intently for evidence of any nature or kind which could be a mitigating factor whether it was a statutorily enumerated mitigating circumstance or a nonstatutory mitigating circumstance.
"The Defense argued adamantly that the Court should not order a Presentence Investigation (PSI) of the Defendant. The State argued that case law certainly supports the right of a trial judge in a first degree murder case to order and consider a PSI prior to sentencing the defendant. After much reflection this Court followed the urging of the Defense and ruled that sentencing would be based solely on the evidence presented during all phases of the trial. Therefore the chance for possible additional mitigating circumstances to be presented to the Court was waived by the Defense."

AGGRAVATING CIRCUMSTANCES
"Four statutorily enumerated aggravating circumstances were presented by the State to the Jury, Sections 921.141(5)(d)(e)(f)(h), Fla. Stat. (1981). The remaining statutorily enumerated aggravating circumstances, Sections 921.141(5)(a)(b)(c)(g)(i), Fla. Stat. (1981), were not presented to the Jury and therefore they will not be discussed herein."
THE CAPITAL FELONY WAS COMMITTED WHILE THE DEFENDANT WAS ENGAGED OR WAS AN ACCOMPLICE, IN THE COMMISSION OF, OR AN ATTEMPT TO COMMIT, OR FLIGHT AFTER COMMITTING OR ATTEMPTING TO COMMIT, ANY ROBBERY, RAPE, ARSON, BURGLARY, KIDNAPPING, OR AIRCRAFT PIRACY OR THE UNLAWFUL THROWING, PLACING, OR DISCHARGING OF A DESTRUCTIVE DEVICE OR BOMB. (Sec. 921.141(5)(d) Fla. Stat. (1981)).
FINDING: The evidence presented during the trial established that IRA AMAZON during the early morning hours of December 1, 1981, left his home, which was next to the Chapin residence. He scaled the wooden fence which divided the two residences, crossed the Chapin backyard to a point where he climbed the roof covering the back patio and then entered a second story window in the Chapin home. Once inside the house he found Joy Chapin and in an upper bedroom he bound her, inflicted a "taunting" knife wound to her buttocks, in an animal like manner he placed a "sucker" mark on her left shoulder and one on her right breast nipple and then he raped her. After holding Joy Chapin against her will and raping her, the Defendant forced her to accompany him as he went through the house looking for items of value. IRA AMAZON kidnapped Joy Chapin.
"This aggravating circumstance was established beyond a reasonable doubt."
THE CAPITAL FELONY WAS COMMITTED FOR THE PURPOSE OF AVOIDING OR PREVENTING A LAWFUL ARREST OR EFFECTING AN ESCAPE *17 FROM CUSTODY. (Sec. 921.141(5)(e) Fla. Stat. (1981)).
FINDING: IRA AMAZON by his own statements to Detective Gary D. Herbein admitted that he killed Joy F. Chapin and Jennifer Chapin because they could recognize him. Further, the evidence clearly shows that he took the knife and rope into the Chapin residence with him. From this fact and based on the Defendant's aforesaid statement, IRA AMAZON realized that a neighbor could not expect to commit a burglary and rape of another neighbor without being identified.
"This Court should pause at this point and state that it is not unmindful of arguments raised by defendants sentenced to death that Trial Judges often erroneously `double' certain statutorily enumerated aggravating circumstances. However, the Florida Supreme Court's guidance and reasoning in Washington v. State, 362 So.2d 658, (Fla. 1978) applies to this case. Herein the Defendant committed a burglary, a rape, a kidnapping, and was on a quest for pecuniary gain when he discovered Jennifer Chapin phoning for help. Jennifer knew her mother was in trouble. She knew who was holding her mother in fear. Therefore, the Defendant brutally attacked and murdered her and as Joy Chapin fought with the Defendant in defense of her daughter, he murdered her. IRA AMAZON admitted he killed them because they could recognize him.
"The Court is not `doubling' this aggravating circumstance with any other statutorily enumerated aggravating circumstance. This aggravating factor, standing alone, was proven beyond a reasonable doubt."
THE CAPITAL FELONY WAS COMMITTED FOR PECUNIARY GAIN. (Sec. 921.141(5)(f) Fla. Stat. (1981)).
FINDING: The evidence proves this aggravating circumstance beyond a reasonable doubt.
"The Defendant, through his own testimony, admitted that after he raped Joy Chapin he demanded `any valuables'. Other evidence presented during the trial established that the Defendant entered the victim's residence to steal items of pecuniary value."
THE CAPITAL FELONY WAS ESPECIALLY HEINOUS, ATROCIOUS, OR CRUEL (Sec. 921.141(5)(h) Fla. Stat. (1981)).
FINDING: The murders of Joy F. Chapin and Jennifer Chapin were ESPECIALLY heinous, atrocious and cruel. These crimes of premeditated murder are FAR APART from the norm of capital felonies.
"Dr. Brown, the Medical Examiner, testified that the young child, Jennifer, received 18 stab wounds to her body. Jennifer witnessed the hysteria experienced by her mother during the rape and Jennifer was phoning for help when IRA AMAZON discovered her. The Medical Examiner testified further that Jennifer received defense wounds to her arms. These wounds are mute evidence of her feeble attempts to ward off the vicious attacks of the Defendant.
"Notwithstanding the gross humiliation, the wounds and the pain already inflicted upon her by the Defendant, Joy Chapin struggled with IRA AMAZON in an attempt to save her daughter's life. According to Dr. Brown's testimony, Joy also received multiple stab wounds to her body. During the life struggle with the Defendant Joy Chapin was knocked backward, down a flight of stairs, and into the living room. The blood on the wall, sofa and floor of the living room, together with the defensive wounds on her body and her broken nose and bruised lips, all confirm Joy Chapin's violent struggle for her own life as well as that of her daughter.
"Dr. Brown said that the proximate cause of death of both Joy and Jennifer was exsanguination (bleeding to death) and both victims lived for 15 to 20 minutes before dying.
"The killings were totally senseless. Death was not instantaneous and each victim slowly died, suffering their own terrifying anguish, and sensing the tremendous excrutiating pain the other was feeling.
*18 "This aggravating circumstance was proven beyond a reasonable doubt."

PREMEDITATION
"In case number CRC 81-9620 CFANO, State of Florida vs. IRA MARTIN AMAZON, filed on the 8th day of December 1981, in the Circuit Court for the Sixth Judicial Circuit of Florida in and for Pinellas County, the Defendant was charged with Burglary to the residence of Joy F. Chapin and Involuntary Sexual Battery upon Joy F. Chapin. On the 26th day of April, 1982, the Defendant changed his plea to the charges from not guilty to guilty. On the 8th Day of December, 1982, subsequent to the trial of the Defendant, IRA AMAZON, for the Murder of Joy F. Chapin, this Court sentenced IRA AMAZON for the crimes of Burglary and Involuntary Sexual Battery.
"After having heard all the evidence presented during the trial of IRA AMAZON for the murders of Joy F. Chapin and Jennifer Chapin, this Court determined that the Defendant had more than ample time to form a purpose to kill the victims herein and for his mind to become fully conscious of his own design. There was more than adequate proof in the record of premeditation.
"The evidence presented establishes beyond a reasonable doubt that the Defendant entered the Chapin residence in the early morning hours without permission or consent, he brought a knife and rope into the residence with him, he raped Joy F. Chapin, he kidnapped her, he then forced her to accompany him as he searched the house for valuables, he came upon Joy's 11 year old daughter Jennifer, phoning for help. He, by his own admissions, killed Jennifer and Joy Chapin because they could identify him. IRA AMAZON, by his very own statements, knew what he was going to do to Joy and Jennifer Chapin and he did it. Dr. Merin's testimony substantiated the fact that IRA AMAZON was able to develop the requisite intent before and at the time of the actual stabbings. The record also establishes the fact that the Defendant had the time in which to reflect, form the intent and then kill. The murders of Joy and Jennifer Chapin, by the Defendant, were premeditated."

CONCLUSION
"This Court, like the Trial Judge in Buford v. State, 403 So.2d 943, (Fla. 1981), acknowledges the awesome responsibility of making the ultimate determination of whether the aggravating circumstances do in fact outweigh any mitigating circumstances and accordingly, whether the death penalty should be imposed over the jury's recommendation for life.
"If ever there was a case ESPECIALLY heinous, atrocious and cruel and FAR APART from the norm of First Degree Murder Cases, the case sub judice is such a case. The imposition of the death penalty is called for in this case.
"Therefore, as to the Indictments for First Degree Murder of Joy F. Chapin and First Degree Murder of Jennifer Chapin and the Jury having found the Defendant, IRA AMAZON, guilty of these Murders in the First Degree, it is the ultimate finding and determination of the Court that the aggravating circumstances SUBSTANTIALLY outweigh the mitigating circumstances. Thus, the death penalty is imposed by this Court upon the Defendant, IRA AMAZON, for the murder of Joy F. Chapin and for the murder of Jennifer Chapin, the recommendations of the Jury for life notwithstanding. Further, this Court having found that these murders were committed with a premeditated design, does hereby readopt, republish and reaffirm its sentences of the Defendant for Burglary and Involuntary Sexual Battery ordered on the 8th day of December, 1982.
"The Court's written findings stated herein were not entered into the official court file until this time due to the Court's investigation into the actions of certain jurors in this case. Said investigation was necessitated by the Suggestion of Judicial Inquiry filed herein. The Court completed its investigation and rendered its final order on the 25th day of July, 1983.
*19 "DONE AND ORDERED in Chambers, Clearwater, Pinellas County, Florida, this 29th day of July, 1983."
Where the jury's recommendation of life is not based on some reasonable ground of mitigation discernible from the record, and the weighing process apart from the jury's recommendation indicates a sentence of death, the court should overrule the jury's recommendation and impose a sentence of death. Stevens v. State, 419 So.2d 1058 (Fla. 1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983). I would affirm the sentences of death.
ADKINS, J., concurs.
NOTES
[1] When a waiver is required of the defendant as to any aspect or proceeding of the trial, experience clearly teaches that it is the better procedure for the trial court to make inquiry of the defendant and to have such waiver appear of record. The matter would thus be laid to rest.