# Third District Court of Appeal

## State of Florida

Opinion filed February 12, 2025.

_____

No. 3D22-2151
Lower Tribunal No. F18-1647

_____

**Alexis Salgado-Mantilla,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Zachary James, Judge.

Carlos J. Martinez, Public Defender, and Susan S. Lerner, Assistant Public Defender, for appellant.

John Guard, Acting Attorney General, and Kayla Heather McNab, Assistant Attorney General, for appellee.

Before LOGUE, C.J., and LINDSEY and BOKOR, JJ.

<u>ON MOTION FOR REHEARING</u>

LOGUE, C.J.

We deny the motion for rehearing but withdraw our prior opinion and issue this opinion in its stead.  Alexis Salgado-Mantilla appeals his conviction

and sentence entered after a jury found that he sexually abused his stepdaughter. On appeal, Salgado-Mantilla argues the trial court erred when it allowed the jury during deliberations to re-watch a video of his stepdaughter's out-of-court interview without the judge remaining present. Although both he and his attorney agreed to this arrangement in open court, Salgado-Mantilla argues the record is devoid of any evidence that he knew he had a right to the judge's presence while the jury re-watched the video. Because Salgado-Mantilla did not submit evidence showing his lack of knowledge, we affirm without prejudice to Salgado-Mantilla raising the factual issue of his subjective knowledge in a proceeding under Rule 3.850 of the Florida Rules of Criminal Procedure.

## BACKGROUND

In September of 2022, the trial court convicted Salgado-Mantilla of several crimes after a jury found that he sexually abused his stepdaughter when she was around ten years old. The trial court subsequently sentenced Salgado-Mantilla to two fifteen-year terms in prison, and to three life terms, one without the possibility of parole. The terms are consecutive.

During the jury's deliberations, the jurors sent a note to the judge that requested a video played during trial be played again for them. The video was a recording of a State Attorney forensic interviewer interviewing the

2

victim.[1] The judge then called in the State and defense counsel and explained the jury's request.

The State suggested the procedures for the jury's review of the video. It suggested that everyone "be out of the room except for the bailiff since they are deliberating." The judge then asked for defense counsel's input, and he agreed with the State's suggested procedure. The judge then clarified with defense counsel and asked, "[A]re you okay with discussing these logistics without your client here?" Defense counsel responded affirmatively.

Salgado-Mantilla was then brought into the courtroom and the judge explained the situation to him. The conversation went as follows.

> TRIAL COURT: All right. The jury sent out a note. It just says watch the forensic video.
>
> DEFENDANT: Okay.
>
> TRIAL COURT: All right. So the plan is going to be we are going to bring them all in. It's going to be set up for them. The prosecutor is going to show them how to work the laptop, how to play it. And once they understand how to do it, they are going to go back in the jury room. All of us are then going to leave. Everybody. Okay. Court staff, attorneys, me, audience members. Everybody. It will be an empty courtroom. You will be put in the back as well. The court reporter too. And then [the bailiff] is going to bring the jury out. They will be able to watch it for long as they want. [The bailiff] won't be in here. They will knock on the door when they are done with it, and then they will go back. Sounds good?

---

[1] The victim also testified during the trial.

DEFENDANT: Yes, sir.

TRIAL COURT: All right. Any questions for me?

DEFENDANT: No, sir.

TRIAL COURT: All right. That sounds good to everybody?

[STATE]: Yes, Judge.

[DEFENSE COUNSEL]: Yes.

The jury was then brought in after the judge's conversation with Salgado-Mantilla, and it was left alone to view the video. The jury later returned its guilty verdict. Salgado-Mantilla then filed a motion for new trial raising the ground mentioned above. The trial court denied the motion. This appeal timely followed.

## ANALYSIS

Salgado-Mantilla's claim of fundamental error triggers a de novo review. Nabeack v. State, 364 So. 3d 1116, 1117 (Fla. 4th DCA 2023) ("[District courts] have de novo review of a fundamental error claim." (citing State v. Smith, 241 So. 3d 53, 55 (Fla. 2018))).

4

"Article I, section 16 of the Florida Constitution[2] and the federal constitution's sixth amendment[3] guarantee criminal defendants trial by an impartial jury. The presence of a judge, who will insure the proper conduct of a trial, is essential to this guarantee." Brown v. State, 538 So. 2d 833, 834–35 (Fla. 1989). The presence of the judge is therefore a fundamental right.[4]

Fundamental rights may be waived only by the defendant himself or herself. See Ferrer v. Manning, 682 So. 2d 659, 659–60 (Fla. 3d DCA 1996) (holding "appellate counsel was ineffective for failing to raise and argue as error the trial judge's absence during the readback [of trial testimony to the jury during deliberations]; especially given the nonexistence of a knowing

---

[2] "In all criminal prosecutions the accused shall, upon demand, . . . have a speedy and public trial by impartial jury in the county where the crime was committed." Art. I, § 16(a), Fla. Const.

[3] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State . . . ." Amend. VI, U.S. Const.

[4] Salgado-Mantilla did not need to contemporaneously object to the jury viewing the playback outside the judge's presence in order to raise this constitutional claim on appeal. See Brown, 538 So. 2d at 835 ("Florida case law instructs that a waiver of the trial judge's presence cannot be implied because of a defendant's failure to make a timely objection . . . ."). But because Salgado-Mantilla failed to object, his argument relying on Florida Rule of Criminal Procedure 3.410(a) is misplaced. To preserve an argument that this rule was violated, the defendant must make a contemporaneous objection. See Thomas v. State, 730 So. 2d 667, 668 (Fla. 1998) (holding that a rule 3.410 violation is reversible error but must be preserved with a contemporaneous objection).

and intelligent waiver of the judge's presence by [the defendant] himself . . . [s]uch circumstances are considered fundamental error and are per se reversible" (citing Bryant v. State, 656 So. 2d 426, 428–29 (Fla. 1995); Wallace v. State, 650 So. 2d 95 (Fla. 5th DCA 1995); Glee v. State, 639 So. 2d 1092 (Fla. 4th DCA 1994); Maldonado v. State, 634 So. 2d 661 (Fla. 5th DCA 1994))).

In Bryant,  the Florida Supreme Court held that it was fundamental error for the judge to leave a courtroom during a readback of testimony without an informed waiver by the defendant. 656 So. 2d at 428. The facts in Bryant were as follows.

> The judge, state attorney, and defense counsel assembled to discuss the requests and agreed that the officers' testimony would be read back to the jury in its entirety. When defense counsel noted that [the defendant] was not present, the judge requested that he be brought into the courtroom. The judge also conducted a colloquy in which the attorneys agreed that the judge need not be present during the readback. The record does not indicate when [the defendant] was brought into the courtroom or whether he was present during this colloquy.

Id. (emphasis added).

While the playing of the witness' recorded interview is the equivalent of the readback of testimony in Bryant,[5] Bryant is not precisely on point. Here,

---

[5] Bryant considered the readback of trial testimony while this Court considers the playback of a victim's interview. Both (and the video perhaps more so) may prejudice the jury and thus both go to the underlying fairness of the trial.

6

unlike in Bryant, not only did Salgado-Mantilla's attorney consent on the record, but the judge informed Salgado-Mantilla of the intended method of showing the video to the jury and obtained Salgado-Mantilla's verbal agreement that this procedure "sounded good."

The issue in this case concerns whether Salgado-Mantilla's consent was "informed." In other words, whether Salgado-Mantilla knew he had a right to have the judge present during the video viewing when he agreed that the judge would not be present. Muhammad v. Sec'y, Dep't of Corr., 554 F.3d 949, 957 (11th Cir. 2009) ("[W]aiver is the intentional relinquishment or abandonment of a known right." (quoting United States v. Olano, 507 U.S. 725, 733 (1993))); see also State v. Melendez, 244 So. 2d 137, 140 (Fla. 1971) ("We do not hold that a defendant's absence [from trial] due to lack of notice or which is otherwise involuntary can be subsequently cured by

Therefore, although there is a difference, there is no distinction. See Young v. State, 645 So. 2d 965, 967 (Fla. 1994) ("By permitting the jurors to see the interview once again in the jury room, there is a real danger that the child's statements will be unfairly given more emphasis than other testimony. Furthermore, unlike testimony in open court or even deposition testimony, the interviews are conducted on an ex parte basis without the right of cross-examination. Thus, we hold that videotaped out-of-court interviews with child victims introduced into evidence under section 90.803(23) shall not be allowed into the jury room during deliberations [pursuant to Florida Rule of Criminal Procedure 3.400].").

7

defendant's silent acquiescence in continuation of his trial, without a showing of actual or constructive knowledge.").

Undoubtedly, the judicial best practice would have been for the trial judge to remain in the courtroom during the playing of the interview. Although the jury had begun deliberations, the trial judge could have instructed the jury that they should not resume deliberations until they return to the jury room after watching the video. The next best judicial practice would have been for the trial judge to expressly inform Salgado-Mantilla of the right to have the judge and the parties present during an in-court replay of the interview, and seek his acknowledgement of understanding such right, and ask him to explicitly waive such right on the record. Amazon v. State, 487 So. 2d 8, 11 n.1 (Fla. 1986) ("When a waiver is required of the defendant as to any aspect or proceeding of the trial, experience clearly teaches that it is the better procedure for the trial court to make inquiry of the defendant and to have such waiver appear of record."). If the trial court had followed either of these practices, this "matter would thus be laid to rest." Id.

The cases, however, do not go so far as holding that fundamental error always arises where the record reflects the defendant and his attorney separately agreed to the waiver of the right, but the record does not expressly reflect the defendant knew he had a fundamental right not to waive. See,

8

e.g., Muhammad v. State, 782 So. 2d 343, 351 (Fla. 2001) (holding there was no violation of defendant's due process right to be present at all critical stages when during voir dire "several" potential jurors were interviewed at sidebar while defendant was in courtroom but not also present at sidebar, reasoning defendant was able to consult with attorneys before finalizing jury selection, most of voir dire was in open court, and defendant affirmatively agreed in open court that he had enough time to discuss his choices with counsel).

Indeed, the Florida Supreme Court has raised the concern that in circumstances where a defendant's attorney agreed to a procedure, but the defendant did not expressly do so on the record, there is the potential for invited error. See Thomas, 730 So. 2d at 669 ("In the present case, defense counsel told the judge he had no objection—thus, the rule 3.410 violation was not reversible error."); Roberts v. State, 510 So. 2d 885, 889 (Fla. 1987) (noting potential invited error issue where defendant argued he did not sufficiently waive his sixth amendment right after trial court confirmed the waiver with defense counsel); Amazon, 487 So. 2d at 11 ("[T]rial counsel clearly waived [the defendant's] presence knowingly, intelligently and voluntarily. [The defendant] knew of the waiver, because he had been consulted by his attorneys on the point and advised to waive his presence.

9

He authorized his attorneys to make the waiver. His authorization was knowing and intelligent and as voluntary as any decision made by a client who relies upon and accepts advice of counsel.").

The question of whether Salgado-Mantilla was aware of his right to have the judge present is ultimately a question of fact. We are not factfinders. We note that one court confronted with this question remanded the case for a fact finding before the trial court. See, e.g., Amazon, 487 So. 2d at 10 ("Following oral argument before this Court, we relinquished jurisdiction of the case for an evidentiary hearing on the circumstances surrounding the waiver."). We find that, under the circumstances of this case, the factfinding should be resolved in a proceeding under Rule 3.850 of the Florida Rules of Criminal Procedure.

Here, two factors guide our decision. First, Salgado-Mantilla's counsel consented to the procedure and the trial court then consulted Salgado-Mantilla, obtaining his personal consent in the presence of his attorney. Second, Salgado-Mantilla did not attest or otherwise proffer evidence showing his lack of knowledge in his motion for new trial or anywhere else in the record. See Sims v. State, 135 So. 3d 1098, 1102 (Fla. 2d DCA 2013) (noting the defendant has the burden on appeal of proving a fundamental error (citing Reed v. State, 837 So. 2d 366, 369–70 (Fla. 2002)). In these

10

circumstances, we conclude that the best result is to affirm without prejudice to Salgado-Mantilla framing and raising the factual issue in a Rule 3.850 motion.

Affirmed without prejudice.