530 So.2d 45 (1987)
William T. TURNER, Petitioner,
v.
STATE of Florida, Respondent.
No. 67987.
Supreme Court of Florida.
May 14, 1987.
Opinion After Remand July 7, 1988.
Rehearing Denied September 22, 1988.
*46 Clyde M. Collins, Jr., Jacksonville, for petitioner.
Robert A. Butterworth, Atty. Gen., and Royall P. Terry, Jr., Asst. Atty. Gen., Tallahassee, for respondent.
PER CURIAM.
We have for review the first-degree murder convictions of William T. Turner. The court imposed the jury recommended sentences of life imprisonment for the stabbing death of Turner's estranged wife, Shirley, and death for the stabbing death of Joyce Brown. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
We previously relinquished jurisdiction to the trial court on Turner's request for an evidentiary hearing regarding his claimed involuntary absence from crucial stages of trial. Defense counsel asserted the attorney-client privilege on Turner's behalf,[*] during Turner's testimony and the testimony of Turner's trial counsel. He, thus, successfully prevented disclosure of conversations necessary for a determination of whether Turner waived his absence through counsel or acquiesced in counsel's waiver. Relying, inter alia, on Francis v. State, 413 So.2d 1175 (Fla. 1982), he now claims that, since the record fails to show an affirmative waiver or acquiescence, he is entitled to a new trial. We disagree.
The record is silent only because Turner's counsel thwarted the requested evidentiary inquiry by asserting Turner's attorney-client privilege. The attorney-client privilege is not absolute and "may be outweighed by public interest in the administration of justice in certain circumstances." Sepler v. State, 191 So.2d 588, 590 (Fla. 3d DCA 1966). Section 90.502, Florida Statutes (1985), Lawyer-Client Privilege, provides in part:
(4) There is no lawyer-client privilege under this section when:
... .
(c) A communication is relevant to an issue of breach of duty by the lawyer to his client ... arising from the lawyer-client relationship.
Further, "a lawyer who represents a client in any criminal proceeding may reveal communications between him and his client when accused of wrongful conduct by his client concerning his representation where such revelation is necessary to establish whether his conduct was wrongful as accused." Wilson v. Wainwright, 248 So.2d 249, 259 (Fla. 1st DCA 1971). See also Laughner v. United States, 373 F.2d 326 (5th Cir.1967); Bennett v. State, 293 So.2d 1 (Miss. 1974) (citing Wilson). The Rules Regulating The Florida Bar are in accord:
4-1.6 Confidentiality of information
... .
(c) A lawyer may reveal such information to the extent the lawyer believes necessary:
.....

*47 (4) To respond to allegations in any proceeding concerning the lawyer's representation of the client;...
Despite protestations to the contrary, Turner bases his involuntary absence claim on the alleged breach of defense counsel's duty. Specifically, he claims counsel failed to advise him of his right to voir dire and charge conference participation. In addition, he denies authorizing counsel to waive his presence, thereby implying that counsel did in fact waive his presence without his consent.
Accordingly, we find that Turner no longer has any attorney-client privilege as to communications concerning his crucial stage presence or waiver thereof. In an abundance of caution aimed at protecting Turner's constitutional right to be present at critical stages of his trial, we again relinquish jurisdiction to the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida, for a determination of whether Turner's presence was properly waived. Since a finding that Turner was erroneously denied his critical stage presence will be dispositive of this case, we temporarily withhold review of the remaining issues raised on this appeal.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.

OPINION AFTER REMAND
SHAW, Justice.
William T. Turner appeals his first-degree murder convictions and sentences of life imprisonment for the murder of his wife, Shirley Turner, and death for the murder of her roommate, Joyce Brown. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions and sentences.
Turner broke into his estranged wife's apartment and stabbed her twenty-two times in the presence of their daughter, Anetra. Shortly thereafter, he stabbed Shirley's roommate, Joyce Brown, while she called the police from a nearby telephone booth. The jury found Turner guilty of the murders and recommended life imprisonment for the first murder and death for the second. The court found four aggravating factors as to Brown's murder: (1) Turner was previously convicted of a violent capital felony; (2) Turner committed the murder during a burglary; (3) the murder was heinous, atrocious and cruel; and (4) the murder was cold, calculated and premeditated. Finding that the aggravating factors far outweighed the statutory and nonstatutory mitigating factors, the court imposed the jury's recommended sentence of death.
Turner raises twelve issues on appeal, only four of which require discussion.[1] He first argues that he is entitled to a new trial because of his claimed involuntary absence from the voir dire conference. The record shows that at the close of voir dire examination, the trial judge stated:
Now, ladies and gentlemen, it's going to be necessary that I have a brief conference with the attorneys involved in the case. I'm not going to let anybody go anywhere, but we're going to retire to the chambers back here briefly and we'll be in recess.
The judge and counsel then removed themselves to chambers for the exercise of juror challenges, leaving Turner in the courtroom. We recognized in Francis v. State, 413 So.2d 1175, 1177 (Fla. 1982), that the defendant
has the constitutional right to be present at the stages of his trial where fundamental fairness might be thwarted by his *48 absence. Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). See also Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Florida Rule of Criminal Procedure 3.180(a)(4) recognizes the challenging of jurors as one of the essential stages of a criminal trial where a defendant's presence is mandated. This rule expressly provides:
(a) Presence of Defendant. In all prosecutions for crime the defendant shall be present:
... .
(4) At the beginning of the trial during the examination, challenging, impanelling, and swearing of the jury; ...
We relinquished jurisdiction to the trial court for an evidentiary hearing regarding the voluntariness of Turner's absence. The trial court found that he had waived his right to be present, stating in pertinent part:
This court finds:
a. Mr. Smith testified that he did not advise Turner that he had a right to be present in the jury room when the challenges  which had already been agreed upon by the defendant and his attorneys  were announced, nor did they specifically discuss the question of his being or not being in the jury room (July 28, 1987, Tr. p. 27).
b. Mr. Smith had visited Turner in the jail and familiarized him with the progression of a trial, including some discussion of the jury selection process.
c. During the jury selection process (in open court), Mr. Smith questioned Turner concerning his (Turner's) impressions of the prospective jurors and if there was any prospective juror he did not want (July 28, 1987, Tr. p. 29).
d. Mr. Smith advised Turner concerning the attorney's intentions as to challenges of certain jurors. Turner was asked if he liked any of these people (July 25, 1987, Tr. p. 29).
e. Mr. Smith testified: that he saw no difference between the way the jury challenges were handled in the jury room or in the same room with Turner. "[W]e were going to do the same thing after we had discussed it with him" (emphasis added) (July 28, 1987, Tr. p. 30).
f. Mr. Smith explained to Turner that both the State and the defense can take people off the jury for no reason at all (July 28, 1987, Tr. p. 35).
g. During voir dire, after each of the two questioning sessions (in open court), the defendant and his attorneys discussed who they liked and who they wanted to challenge among the prospective jurors (July 28, 1987 Tr. p. 36, 38-39). After each challenging session, the defendant was informed by counsel, which veniremen remained for jury service (July 28, 1987, Tr. 40).
The trial jury was selected on August 12, 1985. During that voir dire process, the defendant only exercised 9 of the 10 peremptory challenges allotted to him. The jury was not sworn until August 13, 1985. The defendant saw and was fully informed by counsel on August 12, 1985, which veniremen were on the jury. The defendant never expressed dissatisfaction with his jury and never sought to exercise the remaining challenge on August 13, 1985, before the jury was sworn (July 28, 1987, Tr. p. 16, 17-18 & September 19, 1986, Tr. p. 147).
h. Neither counsel nor any other witness in these proceedings was aware of anything done by anyone to prevent Turner from going into the jury room with his attorneys (July 28, 1987, Tr. p. 43).
The record reflects that all the bailiffs who participated in this trial during voir dire, stated that the defendant never requested to go to the jury room during the challenging session. They all stated that if the defendant had made such a request, or any request at all, they would have honored his request or at the very least, brought it to the attention of the trial judge or the defense attorneys.
This court specifically finds that the defendant never requested to be present in the jury room during the time when the challenges  already agreed upon by *49 the defendant and his attorneys  were announced.
i. Turner and his attorneys had a harmonious working relationship. He was cooperative at all times with his attorneys (July 28, 1987, Tr. p. 22).
Therefore, it is the finding of this court that at all times material, Turner enjoyed meaningful participation in the jury selection process. The gathering of the attorneys and the trial judge in the jury room was limited essentially to announcing the jury strikes already agreed upon by the defendant and his attorneys. This court finds that inasmuch as counsel kept Turner well advised as to the entire process and Turner, according to Mr. Smith, found no fault with and participated in the jury selection process, that counsel was empowered by Turner to challenge peremptorily, the jury, in his absence. This court also finds that the defendant gave constructive ratification and affirmation to all acts of counsel respecting the jury selection. This court further finds that the defendant knowingly, freely and voluntarily waived his appearance at the challenging session, when his attorneys merely announced the challenges  that had already been agreed upon by the defendant and his attorneys. Turner was not deprived of due process.
We cannot agree that Turner waived his right to be present during the exercise of challenges or that he constructively ratified or affirmed counsel's actions. A defendant's waiver of the right to be present at essential stages of trial must be knowing, intelligent and voluntary. Amazon v. State, 487 So.2d 8 (Fla.), cert. denied, 479 U.S. 914, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986); Peede v. State, 474 So.2d 808 (Fla. 1985), cert. denied, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 575 (1986). Turner's defense counsel testified that he did not advise Turner of his right to be present. The record does not indicate that the trial court informed Turner of his right or questioned him as to any ratification of counsel's exercise of challenges in his absence. A defendant cannot knowingly and intelligently waive a right of which he is unaware. Silence is insufficient to show acquiescence. Francis.
Nevertheless, we find Turner's absence harmless in this case. Defense trial counsel testified at the evidentiary hearing as follows:
And when we started jury selection and we went through the questions of the prospective jurors, the State did theirs, the defense did theirs, what I did when that was over was I sat and talked to William about what we were trying to do. I explained to him that we were trying to pick a fair and impartial jury for him, and I talked to him about, "Is there anybody on the jury that you have strong feelings about one way or the other? Is there somebody on there that you want, or somebody on there that you don't want? Have you gotten any impressions from your observations of the jury? Has anybody had eye contact with you that you took to mean something about that juror?"
... .
We talked very briefly about general terms of, "are there any jurors that you like, any jurors that you dislike?"
And we had a chart made up of the prospective jurors in their seats. And I told William, "Here's the people that we're thinking about challenging; are any of these people that you like? Are there some people on here that you don't like?"
... .
Q Did you explain that during  to the defendant before the voir dire process, the defense and the State have opportunities to challenge or excuse certain members of the potential jurors?
A I did, but I didn't use those terms. I had to speak in very simple language in terms of, "We get to take some people off the jury for no reason at all, and the State has a right to do the same thing."
Clearly, Turner had an opportunity to participate in choosing which jurors would be stricken from the panel. He could have offered no further assistance during counsel's actual exercise of the peremptories. *50 Nor could he assist counsel in the presentation of the legal arguments supporting the requested challenges for cause. Turner's involuntary absence did not thwart the fundamental fairness of the proceedings, and, therefore, was harmless. See Roberts v. State, 510 So.2d 885 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1123, 99 L.Ed.2d 284 (1988); Garcia v. State, 492 So.2d 360 (Fla.), cert. denied, 479 U.S. 1022, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986).
Turner also argues that he was involuntarily absent from the jury charge conference in chambers. Defense counsel Smith testified at the evidentiary hearing after remand, that he did not advise Turner of his right to be present at the charge conference. Defense counsel Coxe, Judge Southwood, and state assistant attorney Kunz testified, however, that the judge asked Coxe in Turner's presence whether he wanted Turner to accompany them into chambers. Counsel conferred with Turner, and then waived Turner's presence stating that Turner was tired and wished to return to his cell for dinner. Muehleman v. State, 503 So.2d 310 (Fla.), cert. denied, ___ U.S. ___, 108 S.Ct. 39, 98 L.Ed.2d 170 (1987), involved similar facts. Counsel waived the defendant's right to attend the jury charge conference after consulting with Muehleman and informing the court that it had been a long week for the defendant and he wished to return to his cell. We rejected the argument that the defendant was involuntarily absent finding that
Muehleman's obvious participation in this waiver represents more than the mere acquiescence in and knowledge of counsel's request which has been found sufficient in Amazon v. State, 487 So.2d 8 (Fla. 1986), and State v. Melendez, 244 So.2d 137 (Fla. 1971). Under these circumstances, Muehleman should not now be heard to argue that his absence at the charge conference prejudiced his case. We therefore find no basis for his claim that his absences violated his constitutional right to be present at trial.
Id. at 315. The record in the instant case shows that Turner knowingly acquiesced in his counsel's waiver. We find no error. See Amazon; Melendez.
Turner next argues that the court abused its discretion in allowing into evidence the victim's taped telephone conversation. Joyce Brown ran to a nearby telephone booth and called the police after Turner broke into her apartment and began stabbing his estranged wife, Shirley. Turner attacked Brown in the booth, stabbing her fifty-one times. Turner states repeatedly on the tape, "[y]ou're the one," to which Brown responds, "I didn't do nothing, William." This exchange is followed by a series of accusations and denials amid Brown's screams. Turner claims, in essence, that the tape was not relevant to any material issue and therefore was inadmissible. We disagree. Although Turner correctly argues that identity was not an issue, we find that the tape was relevant to premeditation.[2] The trial court has wide discretion concerning the admission of evidence, and we will not disturb the court's ruling unless an abuse is shown. King v. State, 514 So.2d 354 (Fla. 1987); O'Connell v. State, 480 So.2d 1284 (Fla. 1985); Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982). Welty v. State, 402 So.2d 1159 (Fla. 1981). Turner has shown no abuse.
In imposing the death penalty for the murder of Joyce Brown, the trial judge found four aggravating factors. Turner challenges three of these aggravating factors.[3] First, Turner asserts that he was not charged with burglary and that the facts do not support the finding that Brown was murdered while Turner was engaged in the commission of a burglary. Section 921.141(5)(d), Florida Statutes (1983), does not require that a defendant be charged or convicted of the enumerated felonies, it requires only that the aggravating circumstances be proven beyond a reasonable *51 doubt. The evidence here shows that Turner broke into the home of Brown, killed his estranged wife, and pursued and killed Brown when she fled seeking help. It is clear that Turner had an intent to commit an offense when he broke into the house and, on the evidence, the jury and judge would be justified in finding that the intended offense was the murder of his estranged wife and Brown. Turner next argues that the murder was not especially heinous, atrocious, and cruel. § 921.141(5)(h), Fla. Stat. (1983). This argument is contrary to the evidence showing that Turner pursued and cornered Brown in a telephone booth where, despite her pleas, he stabbed and cut her to death. Finally, Turner argues that the murder of Brown was not committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. § 921.141(5)(i), Fla. Stat. (1983). We disagree. There was evidence that Turner had threatened to kill both women because he believed they had a lesbian relationship and that Brown had seduced his wife and taken her and his family away. There was also evidence that Turner believed his wife was a prostitute. The night before the murders Turner claimed to have heard his wife having sexual intercourse with another man.[4] After reflection, Turner appeared at the home early the next morning armed with a single-shot shotgun and a very large ("Buck") knife. Even Turner's examining psychiatrist testified that the victims were chosen purposefully and that the murder, although pathological, showed a planning ability less consistent with psychosis than reality testing. Any assertion that he was in an uncontrollable frenzy is belied by the testimony of witnesses that Turner temporarily ceased the attack and hid when a policeman drove by, resuming the attack thereafter. We are satisfied that the judge did not err in finding heightened premeditation without any pretense of moral or legal justification.
Finding Turner's remaining arguments meritless, we affirm his convictions and sentences.
It is so ordered.
EHRLICH, C.J., OVERTON, GRIMES and KOGAN, JJ., concur.
McDONALD and BARKETT, JJ., concur as to guilt but dissent as to penalty.
NOTES
[*] § 90.502(3)(e), Fla. Stat. (1985).
[1] We find the following remaining issues meritless: (1) the court abused its discretion in excluding Baker act evidence; (2) the state failed to prove beyond a reasonable doubt that Turner was sane at the time of the crime; (3) there was insufficient evidence of premeditation; (4) the court erred in instructing the jury on felony-murder; (5) the court refused Turner's requested instruction on age and duress as mitigating factors; (6) the court improperly rejected statutory and nonstatutory mitigating factors; (7) the court improperly doubled the aggravating factors that the murder was heinous, atrocious and cruel and cold, calculated and premeditated; and (8) the court gave undue weight to the jury's recommended death sentence.
[2] Contrary to Turner's claim, the record indicates no defense stipulation regarding premeditation.
[3] He does not deny that he had been previously convicted of the murder of his estranged wife. § 921.141(5)(b), Fla. Stat. (1983).
[4] We emphasize that these beliefs, as recounted to his examining psychiatrist and subsequently testified to by this doctor, are not supported by record evidence.