675 So.2d 996 (1996)
Carlos Omar MEJIA, Appellant,
v.
STATE of Florida, Appellee.
No. 95-1182.
District Court of Appeal of Florida, First District.
June 13, 1996.
Rehearing Denied July 12, 1996.
Nancy A. Daniels, Public Defender; P. Douglas Brinkmeyer, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Jean-Jacques Darius, Assistant Attorney General, Tallahassee, for Appellee.
*997 WEBSTER, Judge.
In this direct criminal appeal, appellant argues that the trial court committed two errors, either of which entitles him to a new trial: (1) failing to ensure that appellant's absence from bench conferences at which jury challenges were exercised was the result of an intelligent and voluntary choice; and (2) denying appellant's requested jury instruction on voluntary intoxication as a defense to first-degree murder and robbery. Appellant also asserts that the trial court failed to grant credit on his sentences for time spent in jail prior to sentencing. We affirm.

Participation in Jury Selection
Appellant was charged by indictment with first-degree murder and robbery. Jury selection commenced on January 23, 1995, eighteen days after release of the opinion in Coney v. State, 653 So.2d 1009 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 315, 133 L.Ed.2d 218 (1995). In Coney, the supreme court purported to "clarify" the intent behind Florida Rule of Criminal Procedure 3.180(a)(4), which states that, "[i]n all prosecutions for crime[,] the defendant shall be present ... at the beginning of the trial during the examination, challenging, impanelling, and swearing of the jury"; and its previous decision on the same subject in Francis v. State, 413 So.2d 1175 (Fla.1982). It held:
The defendant has a right to be physically present at the immediate site where pretrial juror challenges are exercised.... Where this is impractical, such as where a bench conference is required, the defendant can waive this right and exercise constructive presence through counsel. In such a case, the court must certify through proper inquiry that the waiver is knowing, intelligent, and voluntary. Alternatively, the defendant can ratify strikes made outside his presence by acquiescing in the strikes after they are made.... Again, the court must certify the defendant's approval of the strikes through proper inquiry.
653 So.2d at 1013 (citations omitted). The court held, further, that a violation of rule 3.180(a)(4), as interpreted, is subject to a harmless error analysis. Id. Without elucidation, the court pronounced that its ruling was "prospective only." Id.
Although appellant, a native of Honduras, spoke and understood some English, at his request, an interpreter was appointed to translate during the trial. The record reflects that counsel and the trial court were aware of the recently released Coney opinion, and that they attempted to comply with what they understood its holding to require. When it came time to discuss challenges to the prospective jurors, the trial court, counsel, appellant and the interpreter all adjourned to chambers, at which point the transcript reflects the following:
THE COURT: All right.
[DEFENSE COUNSEL]: (To the Interpreter) You tell him this is a hearing, and he has a right to be here any time. He can waive it, though, like during the trial when the lawyers go up to the bench to see the judge. We may be discussing an objection or some legal point. He can waive his coming up to the bench, or he can come up there and have you come up and say what is going on.
THE DEFENDANT: (In English) Okay.
[DEFENSE COUNSEL]: Well
THE INTERPRETER: It is okay.
[DEFENSE COUNSEL]: Is he waiving it?
THE DEFENDANT: (In English) Yes.
[DEFENSE COUNSEL]: Good idea. Okay.
After three prospective jurors had been stricken for cause, the trial court asked counsel whether they wished to address peremptory challenges in chambers, or in the courtroom. With appellant still present in chambers, defense counsel responded:
If I can have a moment, Judge, I may be able to kind ofI had told the defendant to look them over and tell me, too, and he had a couple. I will see if we canI can do some of our peremptories now, provided we have an additional opportunity when I see who is in the box.
Defense counsel then struck three jurors, after which he said that he "would like for *998 the defendant to have an opportunity when we put them back in the box to just take a quick look at them."
After everyone, including appellant, had returned in the courtroom, the trial court dismissed the stricken jurors, replacing them with new prospective jurors. After the new jurors had been questioned, the trial court asked counsel if they needed "a moment." Defense counsel responded in the affirmative. It is apparent that defense counsel then conferred with appellant regarding the prospective jury panel. Defense counsel then asked if counsel could approach the bench, saying that "we did waive that other matter, for the record," an obvious reference to the fact that appellant had waived his right to be present at bench conferences. Although the transcript reflects that a bench conference followed, it was not recorded. Clearly, however, the subject was peremptory challenges, as seven additional prospective jurors were excused. Additional jurors were called and questioned. The trial court again asked if counsel needed "a minute," and defense counsel again responded in the affirmative. Again, it is apparent that defense counsel conferred with appellant. Another unreported bench conference took place, after which defense counsel said, "Judge, I want the record to reflect that the defendant has waived his presence at these bench conferences." Seven additional jurors were then excused. These jurors were replaced and, after the replacements had been questioned, another unreported bench conference took place. Four more jurors were excused, after which both parties accepted the panel. The record reflects that defense counsel exercised all ten of his peremptory challenges.
At the conclusion of the presentation of evidence, the trial court, counsel, appellant and the interpreter adjourned to chambers for the charge conference. Before taking up the matter of jury instructions, the following took place:
THE COURT: Well, let me put a couple of things on the record first.
....
Mr. Mejia, are you satisfied with the translator's services ... ?
[THE DEFENDANT]: Yes.
[THE DEFENDANT]: (Through the interpreter) Yes.
THE COURT: Mr. Adams [defense counsel], we have had a number of bench conferences, I think, earlier on. You waived the defendant's presence, but we have also had some that were not on the record. I think we ought to reflect on the record that nothing took place during those conferences where we did not have the reporter present that would in any way affect the outcome of this trial or would affect an appealable issue.
[DEFENSE COUNSEL]: That's correct, Your Honor. And I did discuss that through the interpreter with [the defendant], and he waived his presence. It is a much more orderly fashion, and we all know that is in light the [sic] relatively new case.
On appeal, appellant argues that Coney applies, and that he is entitled to a new trial because the trial court failed either to certify, after a proper inquiry, that appellant's waiver of his right to be present at bench conferences during which peremptory challenges were exercised by his counsel was intelligent and voluntary; or to require appellant to ratify the strikes after they had been made, and to certify, after proper inquiry, that such ratification was intelligent and voluntary. According to appellant, his absence from the bench conferences "thwarted the fundamental fairness of the proceedings" and "was, in any event, a clear violation of [r]ule 3.180(a)(4)." Moreover, appellant argues that the trial court's error cannot be considered harmless because it is impossible "to assess the extent of prejudice sustained by appellant's absence" and, therefore, one cannot conclude "beyond a reasonable doubt that this error did not affect the fairness of the trial."
The state responds, first, that any error was not preserved by contemporaneous objection. Next, the state argues that Coney is inapplicable because the supreme court expressly stated that the holding was to be "prospective only" (653 So.2d at 1013), and the decision did not become final until April 27, 1995, four days after appellant's trial had *999 begun. According to the state, under pre-Coney case law, it was sufficient if a defendant was physically present in the courtroom during jury selectionactual presence at bench conferences was not required. Finally, the state argues that, even if Coney is applicable, reversal is not appropriate because it is apparent from the record that appellant's "absence at [sic] the bench conferences did not prejudice him" and, therefore, any technical error on the part of the trial court was clearly harmless.
Regarding the state's preservation argument, we note that the initial version of the Coney opinion includes the following sentence, which was deleted, without explanation, after both sides had filed motions for rehearing: "Obviously, no contemporaneous objection by the defendant is required to preserve this issue for review, since the defendant cannot be imputed with a lawyer's knowledge of the rules of criminal procedure." Coney v. State, 20 Fla. L. Weekly S16, 17 (Fla. Jan.5,1995). The state argues that this deletion "indicates that appellant must preserve the issue." We are unwilling to read so much into such a revision. But see Gibson v. State, 661 So.2d 288, 291 (Fla. 1995) (denying claim that defendant's right to be present at bench conferences at which challenges for cause were made by his counsel had been violated and noting, in apparent dicta, that "no objection to the court's procedure was ever made").
According to the supreme court, "[t]he exercise of peremptory challenges has been held to be essential to the fairness of a trial by jury and has been described as one of the most important rights secured to a defendant." Francis v. State, 413 So.2d 1175, 1178-79 (Fla.1982) (citing Pointer v. United States, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894), and Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892)). Clearly, it is because this is considered such a critical stage of the proceedings that the court has undertaken to ensure that a defendant's right to meaningful participation in the decision of how peremptory challenges are to be used is assiduously protected. If a contemporaneous objection were required to preserve for appeal the issue of deprivation of that right, it seems to us that, as a practical matter, the right would be rendered meaningless. Accordingly, to ensure the viability of the rule laid down (or "clarified") by the supreme court in Coney, we conclude that a violation of that rule constitutes fundamental error, which may be raised for the first time on appeal, notwithstanding the lack of a contemporaneous objection. See State v. Johnson, 616 So.2d 1, 3 (Fla.1993) ("for an error to be so fundamental that it can be raised for the first time on appeal, the error must be basic to the judicial decision under review and equivalent to a denial of due process"); Salcedo v. State, 497 So.2d 1294, 1295 (Fla. 1st DCA 1986) (allegation that defendant was absent from courtroom during exercise of peremptory challenges "alleged fundamental error which no objection was necessary to preserve"), review denied, 506 So.2d 1043 (Fla.1987).
The supreme court's failure to elucidate as to its intent when it pronounced that the holding in Coney was to be "prospective only" (653 So.2d at 1013) has engendered considerable confusion, in both trial and appellate courts, regarding the applicability of the holding to "pipeline," and other, cases. E.g., Lett v. State, 668 So.2d 1094 (Fla. 1st DCA 1996) (certifying question of great public importance on motion for rehearing). However, because we conclude that appellant is not entitled to a new trial even if Coney applies, we find it unnecessary to undertake the task of prognostication in an effort to divine the court's intent regarding those cases to which Coney will apply. Instead, we assume, for purposes of this opinion, that Coney does apply.
Section 924.33, Florida Statutes (1995), mandates that "[n]o [criminal] judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant." Referring to this statute, the supreme court has said that, "[u]nder both the statutory law and case law of this state, a [criminal] judgment shall not be reversed unless the appellate *1000 court is of the opinion that the error injuriously affected the substantial rights of the appellant." Small v. State, 630 So.2d 1087, 1089 (Fla.1994). According to the supreme court, in applying this harmless error test, "the burden [is] on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." State v. DiGuilio, 491 So.2d 1129, 1138 (Fla. 1986). The fact that an error may be classified as fundamental, so that it may be raised for the first time on appeal, does not necessarily preclude application of a harmless error analysis. State v. Clark, 614 So.2d 453 (Fla.1992). In fact, the supreme court expressly applied a harmless error analysis in Coney. 653 So.2d at 1013.
Although it is apparent that, at trial, all parties concerned were attempting to comply with what they understood the recently released Coney decision to require, it is equally apparent that the trial court failed fully to comply with the rule laid down. A waiver of appellant's right to be present at bench conferences during which peremptory challenges were exercised was obtained. However, the trial court failed either to ensure, "through proper inquiry," that appellant's waiver was intelligent and voluntary; or to obtain an intelligent and voluntary ratification of the jury chosen. Id. This was error. Accordingly, we must next determine whether there is any reasonable possibility that this error had an adverse impact on appellant's right to a fair trial.
It seems relatively clear that the procedural rule set out in Coney is intended to ensure that a defendant's right to meaningful participation in decisions regarding the exercise of challenges, particularly peremptory challenges, is zealously protected. Assuming such an underlying purpose, our review of the record satisfies us, to the exclusion of all reasonable doubt, that appellant suffered no prejudice to his right to a fair trial as the result of the trial court's technical failure to comply with all of Coney's requirements. It is apparent from the trial transcript that appellant understood that he had the right to participate in the choice of jurors. It is equally apparent that appellant's counsel consistently consulted with appellant regarding the exercise of peremptory challenges. Accordingly, there can be no question but that, although he was not "physically present at the immediate site where pretrial juror challenges [were] exercised" (id.)i.e., at the benchappellant did participate in a meaningful way in the decisions regarding the exercise of peremptory challenges. Thus, it would seem that the important right which the Coney decision was intended to protect was not impaired in any way.
Appellant offers nothing to suggest that he was, in fact, prejudiced as a result of the technical error committed by the trial court. Instead, he relies on Francis v. State, 413 So.2d 1175 (Fla.1982), for the proposition that, because it is possible that he might have been prejudiced as a result of the error, we should not conclude that the error was harmless. However, we believe that Francis is factually distinguishable. In Francis, the defendant was permitted to leave the courtroom to go to the bathroom. While he was gone, his counsel waived his presence without consulting him, and jury selection commenced. The defendant returned to the courtroom before the selection process had been completed. However, the court and counsel then decided to conduct the remainder of the process in chambers, because it was too crowded around the bench. When everyone else adjourned to chambers, the defendant was left sitting in the courtroom. The defendant was never asked whether he waived his presence, or to ratify the jury selected. On appeal, the supreme court concluded that it was unable to say that the error was harmless because it was "unable to assess the extent of prejudice, if any, Francis sustained by not being present to consult with his counsel during the time his peremptory challenges were exercised." Id. at 1179. Here, in contrast, it is apparent that appellant was not prejudiced, because he did consult with counsel prior to the exercise of his peremptory challenges. Accordingly, we hold that the trial court's failure to ensure that appellant's waiver of his right to be present at the bench conferences during *1001 which peremptory challenges were exercised was intelligent and voluntary, or to obtain an intelligent and voluntary ratification of the jury chosen, was harmless. See Turner v. State, 530 So.2d 45, 49 (Fla.1987) (opinion after remand) (holding that defendant did not waive right to be present during exercise of juror challenges, or constructively ratify counsel's actions; but that, notwithstanding absence when challenges were actually exercised, error was harmless because defendant "had an opportunity to participate in choosing which jurors would be stricken").

Voluntary Intoxication
Appellant next complains about the trial court's refusal to give a requested voluntary intoxication instruction to the jury. He argues that both of the charges against him were specific intent crimes, and that there was evidence that he was intoxicated at relevant times. Therefore, he asserts that the trial court was obliged to give a voluntary intoxication instruction upon request, and that the refusal to do so entitles him to a new trial. We disagree.
It is true, as appellant argues, that both first-degree murder and robbery are specific intent crimes, as to which voluntary intoxication may be a valid affirmative defense. Gardner v. State, 480 So.2d 91 (Fla. 1985). It is also true that there was evidence that appellant was intoxicated at relevant times. As a general rule, a "[d]efendant is entitled to have the jury instructed on the rules of law applicable to his theory of defense if there is any evidence to support such instructions." Hooper v. State, 476 So.2d 1253, 1256 (Fla.1985), cert. denied, 475 U.S. 1098, 106 S.Ct. 1501, 89 L.Ed.2d 901 (1986). However, as the supreme court made clear in Hooper, to entitle a defendant to an instruction on an affirmative defense, it is not sufficient that there be evidence to support such a defensethe requested instruction must also be consistent with the defendant's theory of defense.
In Hooper, the defendant argued that the trial court had committed reversible error when it denied his requested instruction on voluntary intoxication in a first-degree murder case. The defendant had taken the stand at trial and denied that he had committed the offenses with which he was charged. Instead, he had testified that the offenses had been committed by an unknown intruder, whom he described in some detail. According to the supreme court, the defendant's "entire defense rested on his claim that someone else had committed the[] murders." Id. at 1255. Because "intoxication was not defendant's theory of defense," the court affirmed the refusal to give the requested voluntary intoxication instruction. Id. at 1256. See also Broxson v. State, 505 So.2d 1361, 1363 (Fla. 1st DCA) (affirming refusal to give voluntary intoxication instruction, in part, because defense of intoxication was "totally inconsistent with the defense presented at trial"), review denied, 518 So.2d 1273 (Fla. 1987). One compelling reason for refusing to require an instruction on a defense which is inconsistent with that asserted at trial is to discourage (or, at least, not to reward) perjury. See Wilson v. State, 577 So.2d 1300 (Fla.1991) (affirming refusal to give instruction on entrapment when defendant testified, denying having committed acts constituting crime charged).
Here, as in Hooper, appellant took the stand and denied under oath that he had committed the offenses with which he was charged. Instead, he testified that another person, whom he identified by name, had been responsible for the crimes. Accordingly, here, as in Hooper, we conclude that, because appellant elected to rely on a defense built around the assertion that someone else had committed the crimes, which defense was inconsistent with a voluntary intoxication defense, it was not error to refuse to give an instruction on voluntary intoxication.

Jail-Time Credit
Finally, appellant asserts that, although, at sentencing, the trial court orally credited 412 days spent in jail against his sentence, the written judgment does not reflect any credit. The state concedes error on this point. Frankly, we are puzzled by the parties' positions regarding the 412 days of jail credit because, although there are two written judgments in the record, both reflect that *1002 appellant is to receive such credit. Accordingly, we affirm on this point, as well.
AFFIRMED.
MICKLE, J., concurs.
LAWRENCE, J., concurs in part and dissents in part with written opinion.
LAWRENCE, Judge, concurring in part and dissenting in part.
I fully concur in affirming the judgment and sentences in this case. However, I must respectfully dissent from the language of the majority opinion which holds that a violation of Florida Rule of Criminal Procedure 3.180(a)(4) constitutes fundamental error, thus permitting the issue to be raised for the first time on appeal without a proper objection in the trial court.
I agree that Coney v. State, 653 So.2d 1009 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 315, 133 L.Ed.2d 218 (1995), did not specifically address this issue. Nevertheless, nine months after rendition of its opinion in Coney, the supreme court decided Gibson v. State, 661 So.2d 288 (Fla.1995), and in addressing a Coney issue said:
Based on this brief exchange, Gibson claims error in two respects. First, he argues that the trial court violated his right to be present with counsel during the challenging of jurors by conducting the challenges in a bench conference. Second, he argues that the trial court violated his right to the assistance of counsel by denying defense counsel's request to consult with Gibson before exercising peremptory challenges.
In Steinhorst v. State, 412 So.2d 332 (Fla.1982), we said that, "in order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below." In this case, we find that Gibson's lawyer did not raise the issue that is now being asserted on appeal. If counsel wanted to consult with his client over which jurors to exclude and to admit, he did not convey this to the trial court. On the record, he asked for an afternoon recess for the general purpose of meeting with his client. Further, there is no indication in this record that Gibson was prevented or limited in any way from consulting with his counsel concerning the exercise of juror challenges. On this record, no objection to the court's procedure was ever made. In short, Gibson has demonstrated neither error nor prejudice on the record before this Court. Cf. Coney v. State, 653 So.2d 1009, 1013 (Fla.1995) (holding trial court's error in conducting pretrial conference where juror challenges were exercised in absence of defendant was harmless beyond reasonable doubt).
Gibson v. State, 661 So.2d at 290-91.
I cannot reconcile this language with the majority view of fundamental error in the instant case. We cannot tell whether the date of the trial in Gibson occurred before or after the decision in Coney.[1] Either way, there was no logical reason for the supreme court, in its Gibson decision rendered nine months after its opinion in Coney, to dwell on the failure of Gibson to preserve the issue, unless the court intended that preservation constitute a requirement for review.
The majority also cites Francis v. State, 413 So.2d 1175 (Fla.1982), in support of its position. However, the circumstances in Francis were much more egregious than those in the instant case. There, the defendant was excused for the purpose of going to the rest room. Jury selection continued during his absence; then the prosecutor, defense counsel, and judge retired to the jury room for the purpose of exercising peremptory challenges. They returned to the courtroom and a jury was sworn without consultation between the defendant and his counsel. Francis testified on his motion for new trial that he had been told by his counsel that he would not be permitted to go into the jury room for the purpose of selecting the jury. In contrast, the trial judge in the instant case *1003 was aware of the decision in Coney, but simply failed to follow it flawlessly.
I find it difficult to conclude that a routine trial practice followed in the vast majority of cases in the State of Florida for a period of almost 15 years[2] was so fundamentally flawed that it amounted to a denial of due process. To do so is to likewise conclude that those same cases spanning a 15-year period resulted in a denial of due process.[3] Thus, I would hold that violation of Florida Rule of Criminal Procedure 3.180(a)(4) is not fundamental error, and therefore may not be raised for the first time on appeal.
NOTES
[1] The opinion in Gibson does not reflect the date of the trial in that case, although the capital offense was committed on September 30, 1991. Therefore, it is more likely that the trial in Gibson predated the decision in Coney.
[2] The Florida Rules of Criminal Procedure were amended in 1980 to provide that peremptory challenges be made outside the hearing of the jury panel.
[3] The holding in Coney was prospective only.