684 So.2d 1378 (1996)
Richard BROWER, Appellant,
v.
STATE of Florida, Appellee.
No. 95-2765.
District Court of Appeal of Florida, Fourth District.
December 11, 1996.
Rehearing Denied January 21, 1997.
Richard L. Jorandby, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and William A. Spillias, Assistant Attorney General, West Palm Beach, for appellee.
STONE, Judge.
Appellant was convicted of first degree murder and aggravated burglary. We are obliged to reverse, notwithstanding overwhelming evidence against him, because the procedure for waiving the defendant's presence at the bench during counsel's peremptory jury challenges, as mandated by the supreme court in Coney v. State, 653 So.2d 1009, 1012-13 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 315, 133 L.Ed.2d 218 (1995), *1379 was not followed by the court. See Wilson v. State, 680 So.2d 592 (Fla. 3d DCA 1996).
The record reflects that defense counsel chose to leave Appellant seated at the counsel table, when making peremptory challenges, about thirty feet away. Appellant did not waive his right to be present during the challenging of the jury, nor did he subsequently ratify the jury selected.
Defense counsel raised the presence issue at a hearing on his motion for new trial, which the trial court denied. Counsel acknowledged at the hearing that he did not advise Appellant of his right to participate actively in making peremptory challenges. Apparently the trial court was not cognizant of the then recent Coney decision and found that the requirement of Appellant's presence at jury selection was satisfied by his presence in the courtroom and the lack of impediment to his consulting with counsel. See Turner v. State, 530 So.2d 45 (Fla.1987), cert. denied, 489 U.S. 1040, 109 S.Ct. 1175, 103 L.Ed.2d 237 (1989).
In Coney, the supreme court announced a new procedure, to be applied prospectively.[1]Coney v. State, 653 So.2d at 1013. Coney was issued January 5, 1995, and became final on April 27, 1995; Appellant's trial began on June 5, 1995. The supreme court in Coney clarified that portion of Florida Rule of Criminal Procedure 3.180(a)(4) which requires the defendant's presence in a criminal prosecution during the challenging of the jury. The court concluded that the rule meant "just what it says: The defendant has a right to be physically present at the immediate site" of pretrial juror challenges, unless the court certifies the defendant's waiver was knowing, intelligent and voluntary, or the defendant ratifies the strikes, on proper court inquiry, afterward. Id.
This court recently described the impact of Coney in Quince v. State, 660 So.2d 370, 371 (Fla. 4th DCA 1995) (citations omitted):
Prior to Coney, the supreme court had required the presence of the defendant at jury selection or the waiver of his presence when the defendant was actually absent from the place where the jury selection was made. Where the defendant was present in court but not at the bench when the actual selection was made, this court held that the jury was selected in the defendant's presence where there were no limitations on the defendant's ability to consult with counsel before any decisions or challenges were made. In this case, the defendant had the opportunity to consult with counsel and to actually come to the bench to do that consulting. Under the preConey cases, the trial court did not abuse its discretion or deny the appellant his constitutional right to be present at a critical stage of the proceedings. However, we caution the trial court that Coney now requires the physical presence of the defendant at the bench or the express questioning of the defendant as to his waiver of his right to be present, or, alternatively, his express ratification of the jury selection made.
We have considered the state's argument that Appellant failed to raise a timely objection, based on Gibson v. State, 661 So.2d 288 (Fla.1995), which was decided after Coney, and which the state construes as modifying Coney. In Gibson the supreme court determined that the defendant had shown neither error nor prejudice in the trial court's refusing his counsel's request for a recess to consult with the defendant immediately before the bench conference on challenges for cause. The supreme court rejected the defendant's argument that the trial court had violated his right to be present during the challenging of jurors and his right to assistance of counsel, noting he had not asserted those issues below. See Steinhorst v. State, 412 So.2d 332 (Fla.1982).
*1380 We find Gibson inapposite. That opinion does not reflect that the supreme court was concerned about the applicability of the Coney procedure. Gibson is a "pipeline" case[2] to which Coney did not apply. Lett. Additionally, in Gibson, the issue raised, namely whether the court erred in denying defense counsel's request for a recess, did not implicate the issue of the defendant's presence at the time of jury challenges. In any event, even applying Coney, any error in Gibson would be deemed harmless because the challenges were for cause, not peremptory challenges. See Coney, 653 So.2d at 1013.
The supreme court did not imply any need for a contemporaneous objection in Coney, and it is clear that violating a defendant's right to be present at the time of peremptory jury challenges is fundamental error that may be raised for the first time on motion for new trial or on appeal. See Francis v. State, 413 So.2d 1175, 1177-79 (Fla. 1982); Mejia v. State, 675 So.2d 996 (Fla. 1st DCA 1996); Salcedo v. State, 497 So.2d 1294, 1295 (Fla. 1st DCA 1986), rev. denied, 506 So.2d 1043 (Fla.1987). Patently, the procedure the Coney court prescribed in order for a defendant to waive his presence or ratify jury selection in the defendant's absence would be superfluous if the simple failure to make a timely objection had the same result. We note that in Mejia, the First District recognized that to require a contemporaneous objection to preserve for appeal the issue of deprivation of the right to be present at the bench conference for peremptory challenges would render it meaningless. 675 So.2d at 999.
Accordingly, it is clear that violation of the Coney procedure requires reversal for new trial, see Wilson (reversing, absent a knowing voluntary waiver, due to defendant's not participating at sidebar exercise of challengesfundamental error); Butler v. State, 676 So.2d 1034 (Fla. 1st DCA 1996) (reversing for new trial because defendant's attorney, not defendant personally, waived defendant's right to be present in courtroom during jury selection), unless it can be demonstrated beyond a reasonable doubt that the error was harmless. See also Francis, 413 So.2d at 1178.
A showing of harmless error requires the state to prove, beyond a reasonable doubt, that the error in question did not contribute to the verdict, or that there is no reasonable possibility that it contributed to the conviction. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
The harmless error doctrine can be applied to certain cases of fundamental error. State v. Clark, 614 So.2d 453 (Fla.1992). In Clark, the supreme court recognized that appellate courts can find harmless error when a violation of sixth amendment rights is raised for the first time on appeal. In that case, the fundamental error concerned the admission of evidence in violation of the confrontation clause.
Rather than an evidentiary right, rule 3.180(a) seeks to protect the constitutional right of the accused to be present "at the stages of his trial where fundamental fairness might be thwarted by his absence." Francis, 413 So.2d at 1177. Application of harmless error analysis in cases involving fundamental error requires that we consider whether it is shown that fundamental fairness to the accused was not prejudiced. In Garcia v. State, 492 So.2d 360, 364 (Fla.), cert. denied, 479 U.S. 1022, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986), the Supreme Court specified that the standard for determining harmless error in cases concerning violations of rule 3.180(a) was as follows:
[W]hile rule 3.180(a) determines that the involuntary absence of the defendant is error in certain enumerated circumstances, it is the constitutional question of whether fundamental fairness has been thwarted which determines whether the error is reversible. In other words, when the defendant is involuntarily absent during a crucial stage of adversary proceedings contrary to rule 3.180(a), the burden is on the state to show beyond a reasonable doubt that the error (absence) was not prejudicial. Delaware v. Van Arsdall, *1381 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
Applying that standard, the Supreme Court determined that the state had met its burden of showing the appellant had not been prejudiced by his absence at a pretrial conference in which the court granted his counsel's motion for individual voir dire and deferred action on counsel's other three motions, as his presence would not have aided defense counsel in arguing those issues. Id. at 363-64.
In Coney, the court applied a harmless error analysis and found no prejudice was shown because the defendant was not present during a bench conference on a legal issue as to which he would have had no input anyway, and no jurors were excused peremptorily at that time, although several were struck for cause. 653 So.2d at 1013. See also Harvey v. State, 529 So.2d 1083, 1085-86 (Fla.1988) (finding no prejudice in violation of rule 3.180(a)(4) because appellant was not present at conference in which juror challenge was made for cause; conference involved legal issue in which appellant would have had no input), cert. denied, 489 U.S. 1040, 109 S.Ct. 1175, 103 L.Ed.2d 237 (1989).
In Mejia, where defense counsel waived the defendant's presence at the bench conferences during which peremptory challenges were made, the First District found that error harmless; the defendant had suffered no prejudice because the record showed he consulted with counsel before his peremptory challenges were exercised. 675 So.2d at 1000-01. Accord Brown v. State, 676 So.2d 1034 (Fla. 1st DCA 1996) (although Coney was not applicable, court would have found noncompliance with Coney procedure was harmless, as record reflected appellant consulted with counsel immediately before bench conference and immediately after, before counsel accepted jury). See also Stano v. State, 473 So.2d 1282, 1288 (Fla.1985), (finding no error in defendant's absence from status conference in which trial court granted one motion, where that act was merely ministerial, and deferred acting on another because of the absence), cert. denied, 474 U.S. 1093, 106 S.Ct. 869, 88 L.Ed.2d 907 (1986).
In Francis, the supreme court emphasized the importance of the right to exercise peremptory challenges to a fair trial:
The exercise of peremptory challenges has been held to be essential to the fairness of a trial by jury and has been described as one of the most important rights secured to a defendant. Pointer v. United States, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894); Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892). It is an arbitrary and capricious right which must be exercised freely to accomplish its purpose. It permits rejection for real or imagined partiality and is often exercised on the basis of sudden impressions and unaccountable prejudices based only on the bare looks and gestures of another or upon a juror's habits and associations.
413 So.2d at 1178-79. The Francis court determined that the appellant's involuntary absence without waiver or ratification was reversible error entitling him to a new trial because it was unable to assess the extent of prejudice, if any, which resulted. Id. at 1179.
We need not determine in this case whether we concur in the harmless error application in Mejia, as here, the record of the hearing on the motion for new trial indicates that there were no conferences between Appellant and his counsel while his peremptory challenges were being exercised. While neither he nor his counsel objected to the procedure, and his counsel expressly approved it, it is impossible to determine the extent of the prejudice Appellant suffered, if any, as a result, and therefore we are obliged to reverse for a new trial.
We find moot an additional issue raised on a motion to dismiss the jury venire due to juror misconduct, and we find no merit in the other eight issues Appellant raised.
SHAHOOD, J., concurs.
FARMER, J., concurs specially with opinion.
*1382 FARMER, Judge, concurring specially.
Although I concur in the reversal of the conviction for a new trial, I cannot agree that the new trial is required because of any perceived error in the procedure used for the exercise of peremptory challenges of jurors. In my opinion, the entire venire of prospective jurors was incurably poisoned by comments of some of the prospective jurors before their voir dire examination. Thus, I think it puts the cart before the horse to address the peremptory challenge issue, for I do not understand why either side must waste peremptory challenges on tainted jurors.
The venire of prospective jurors was taken to the courtroom for voir dire examination and seated there to await the opening of court. As they waited with conversation among themselves, some of them began to talk about the case on which they would presently be examined to sit as jurors. Three prospective jurors later testified to hearing comments made within the hearing of all. These comments included the following: several jurors were heard to say "hang him, hang him;" someone said "they ought to just hang him" and "they ought to just fire him up;" another heard, "where I come from, they just string them up;" still another heard "why don't we just get it over with;" another heard that it would "save time" if defendant had committed suicide; and finally some suggested that defendant's pre-trial flight indicated his guilt. Some of the testifying jurors sought to minimize these remarks as just "joking", as "not serious", or as mere attempts to avoid serving on the jury. All of these prospective jurors who testified to hearing (but not saying) the above were excused for cause. The rest of the venire was not.
Frankly, I find these comments both intolerable and appalling. We should condemn them in the strongest terms. To show our condemnation, we should refuse to go forward with prospective jurors exposed to such corrupt and destructive influences. Nor do I believe that the lame attempts of the jurors to minimize the words justify any discretion of the trial judge. There are some things that simply may not be said or done by prospective jurors without poisoning the entire pool. The comments here are surely among them. No amount of after-the-fact justification can possibly remove the stain and save the venire. I do not understand why any trial judge would not unhesitatingly get rid of the entire room of jurors who had been subjected to these comments and start anew with an uncontaminated group.
These citizens were summoned to hear a case of first degree murder that had been the subject of substantial attention in the press. In circumstances like these, when the glare of the media lurks all around, the conduct of the individual is most susceptible to the pressures, whether overt or subtle, of the group in which one has been placed. Within a group of peers, even of strangers, the compulsion to conform to the strongest, the most vocal, the most assured, is invisibly formidable. This is especially true in jury duty. All have been summoned; all are strangers; all are uncertain; but all desire the approbation of both the court and their peers.
The spoken word can be no less lasting than the written; in this setting, words do not have to be on paper to linger in the mind's ear. Some voices will resound in the courtroom long after they have stopped speaking. To paraphrase (however profanely) the wondrous poet Khayyàm:
"The waggling tongue speaks; and, having spoken,
Echoes: nor all thy piety nor wit
Shall lure it back to cancel half a tone,
Nor all of thy protests conceal a word."
Unless we are willing to let juries become lynch mobs, the trial judge should have started over. I would now require him to do so, but not because of a possible procedural error (as to which I have strong doubts there was error, anyway) in the exercise of peremptory challenges.
NOTES
[1] In Lett v. State, 668 So.2d 1094 (Fla. 1st DCA 1996), the First District held that Coney was inapplicable to trials that took place before the supreme court released its decision in Coney, and certified to the supreme court the question as to whether it intended Coney to apply to "pipeline" cases of similarly situated defendants, pending on direct appeal or not yet final when Coney was released. In Mejia v. State, 675 So.2d 996 (Fla. 1st DCA 1996), it considered but did not need to decide whether Coney applied to a trial which commenced four days before the date Coney became final, finding the error harmless even assuming Coney applied.
[2] Supreme court records indicate that notice of appeal in Gibson was filed in 1993; therefore, that appellant's trial concluded over a year before the supreme court released Coney.