727 So.2d 1026 (1999)
Richard BROWER, Appellant,
v.
STATE of Florida, Appellee.
No. 95-2765.
District Court of Appeal of Florida, Fourth District.
February 17, 1999.
Richard L. Jorandby, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and William A. Spillias, Assistant Attorney General, West Palm Beach, for appellee.
STONE, C.J.
In accordance with the supreme court's opinion in State v. Brower, 713 So.2d 1005 (Fla.1998), quashing our opinion of December 11, 1996, we adopt the supreme court's opinion, affirm Appellant's judgment and sentence on two counts of first-degree murder and one count of armed burglary, and address one additional issue raised concerning an incident that occurred in the course of voir dire, which we had initially deemed moot.
During voir dire, defense counsel alerted the court that a witness for Appellant overheard some of the prospective jurors making remarks assuming Appellant's guilt, such as "hang him," "they ought to just hang him," and "Why are we going through this? Where I come from, we would have just strung him up." The court took testimony from the witness, who identified certain individuals as having made the offending comments, including one who said, "`They're going to have to prove to me that he did not do it.'," and then questioned venire members about what they had heard and said. The testimony indicated that the improper remarks were not directed at the guilt of Appellant, were made out of the boredom in waiting to be called, and as a reference, in jest, to ways of getting out of jury duty. Following the witness's testimony, Appellant moved to strike jurors making the offensive remarks. All were excused. Juror Evans and juror Rabbit, both of whom had heard but not spoken the offensive remarks, remained on the panel throughout voir dire. Neither side wanted to strike Rabbit; however, Evans was not one of the jurors finally selected.
After the prospective jurors retired, defense counsel requested testimony be taken from the judge's deputy clerk, Lori Swenson (Swenson). She stated that during the individual questioning, other prospective jurors, who had remained unsupervised in the courtroom, were not taking the proceedings seriously; they were talking loudly and applauding when one of them was excused. Based on Swenson's and the witness's testimony, defense counsel moved that the court strike *1027 the entire panel. The trial court denied the motion.
Appellant asserts the court abused its discretion in failing to strike the venire and relies on Richardson v. State, 666 So.2d 223 (Fla. 2d DCA 1995). The Richardson court held that the defendant's constitutional right to trial by an impartial jury was denied when a prospective juror, who worked as a corrections officer, indicated she knew the defendant through her employment, implying that he was a convicted felon, and, therefore, his motion to strike the venire should have been granted. See also Kelly v. State, 371 So.2d 162 (Fla. 1st DCA 1979) (reversing and remanding for new trial where several members had been in previous venire that week when jury was chosen for defendant's trial on different charges).
The determination of juror qualifications is a discretionary function of the trial judge. E.g. Adams v. Elliott, 128 Fla. 79, 92, 174 So. 731, 736 (1937); Sims v. State, 184 So.2d 217, 219 (Fla. 2d DCA 1966). Here, the jurors involved were questioned by the court; a great deal of time was devoted to voir dire, including extensive individual questioning of jurors, during which defense counsel could inquire as to whether specific individuals had pre-judged the case or were not taking the responsibility of jury duty seriously. None of the offending jurors served.
We recognize that the conduct of the prospective jurors in question is not only shocking, but represents sad and cynical attitudes held and demonstrated by certain segments of our citizenry. Nevertheless, Appellant was not deprived of a fair trial by the trial court's decision to conduct an inquiry and proceed with those jurors who had not acted offensively and who Appellant has not shown were otherwise tainted. To hold otherwise would impose a per se reversal rule, undermine the trial court's discretion, and effectively impugn the integrity of the remaining jurors who were able to disregard their inadvertent exposure to the boorish and insolent antics of their fellow citizens.
The offending members of the venire were facing a three week murder trial and were enduring a tedious and lengthy jury selection process. They certainly used poor taste and worse judgment in the manner they chose to relieve their boredom. However, there is nothing in the record to indicate that the offensive remarks were offered or taken seriously, or that they referred to the facts of this case, and all evidence is to the contrary. Although the trial court could certainly have granted the motion to strike the venire, we cannot say, upon reviewing the record, that the denial of the motion was an abuse of discretion. Cf. Watson v. State, 651 So.2d 1159 (Fla.1994); Bauta v. State, 698 So.2d 860 (Fla. 3d DCA 1997); United States v. Jones, 696 F.2d 479 (7th Cir.1982).
The right in question is a right to an impartial jury. Prospective jurors are frequently exposed, before and during voir dire, to innumerable comments, attitudes, and points of view, the subscription to which would be improper for an unbiased juror. Simply because the offensive comments were made during the time the prospective jurors were members of a jury venire, there is no reason to apply a different standard here than is generally applied in reviewing the trial court's decisions in voir dire under analogous circumstances. See United States v. York, 933 F.2d 1343 (7th Cir.1991). Although we agree that this court should reverse if it is shown that a manifest injustice resulted from the trial court's refusal to strike the venire, here, such a conclusion would be speculation. See United States v. Hernandez, 84 F.3d 931, 935 (7th Cir.1996) (Where venire members made "explicit comments to the effect that the judicial system was ineffective in apprehending and punishing offenders," but only venire members who testified that exposure to the statement would not impair their impartiality remained on venire, held: "[a]bsent any reasons [beyond speculation] to suspect as untrue the juror's claims of ability to remain impartial despite exposure to improper ... comment, the court should credit those responses." (citation omitted)).
As to all other issues raised, we also find no reversible error or abuse of discretion. Therefore, Appellant's conviction and sentence are affirmed.
*1028 SHAHOOD, J., concurs.
FARMER, J., dissents with opinion.
FARMER, J., dissenting.
As I was saying before the supreme court reversed our previous decision in this case,
"The spoken word can be no less lasting than the written; in this setting, words do not have to be on paper to linger in the mind's ear. Some voices will resound in the courtroom long after they have stopped speaking. To paraphrase (however profanely) the wondrous poet Khayyàm:
`The waggling tongue speaks; and, having spoken,

Echoes: nor all thy piety nor wit
Shall lure it back to cancel half a tone,
Nor all of thy protests conceal a word.'
Unless we are willing to let juries become lynch mobs, the trial judge should have started over. I would now require him to do so, but not because of a possible procedural error (as to which I have strong doubts there was error, anyway) in the exercise of peremptory challenges."
Brower v. State, 684 So.2d 1378, 1382 (Fla. 4th DCA 1996) (Farmer, J., concurring). I continue to dissent from the refusal of this court to order a new trial before an untainted venire.
I will not respond in detail to the rationalization to save the result of the trial before a jury exposed to the most pernicious influences possiblea mob psychology to punish a man who appears to them to be obviously guiltyexcept to repeat what I also said before:
"To show our condemnation, we should refuse to go forward with prospective jurors exposed to such corrupt and destructive influences. Nor do I believe that the lame attempts of the jurors to minimize the words justify any discretion of the trial judge. There are some things that simply may not be said or done by prospective jurors without poisoning the entire pool. The comments here are surely among them. No amount of after-the-fact justification can possibly remove the stain and save the venire. I do not understand why any trial judge would not unhesitatingly get rid of the entire room of jurors who had been subjected to these comments and start anew with an uncontaminated group."
Id.